# WILLIAM E. MATTINGLY

## vs.

## FRANCIS E. MATTINGLY.

*Mortgage Sale—Option in Mortgagor to Repurchase—Waiver as to Time—Purchase in Behalf of Another—Evidence of Agency.*

Where purchasers at foreclosure sale agreed with the mortgagor that they would, at any time within a year from the date of sale, reconvey the land to the mortgagor, or to any person to whom he might make sale, upon payment to them of the amount of the mortgage, with interest thereon, and interest on a judgment which constituted a prior lien, plus a named sum, *held* that the fact that such purchasers received the interest after a year from the sale involved a waiver as to the time within which the mortgagor was to exercise his rights under the agreement.

p. 230

An option given by purchasers at a mortgage sale to the mortgagor's brother, and afterwards exercised by the latter for the purpose of a resale of the property to another, *held* to have been given for the benefit of the mortgagor himself, to whom such purchasers had agreed to convey the property on payment to them of the mortgage and accrued interest, and that consequently the mortgagor's assignee was entitled to the profits on such resale by the brother, less expenses incurred and advances made by the latter.

pp. 236-242

Where one renders services under an express assurance that he will make no charge, or under an understanding to that effect, he cannot recover therefor on the ground that he would have made a charge had he not believed that another agreement between the parties would have been carried out.

p. 243

*Decided April 5th, 1923.*

Appeal from the Circuit Court for Howard County (FORSYTHE, J.).

Bill by the Brightwood Sanitarium Company against W. Mitchell Digges, Francis E. Mattingly and others, to which proceeding William E. Mattingly was, on his petition, made a party defendant. From a decree awarding a certain fund to Francis E. Mattingly, said William E. Mattingly appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*W. H. Surratt* and *Paul R. Hassencamp,* for the appellant.

*James Clark,* with whom were *Hamilton & Hamilton* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

J. Benjamin Mattingly, owner of a tract of land near Laurel, in Howard County, Md., became indebted unto the Eastern Shore Trust Company in the sum of $11,000, and, to secure its payment, he confessed judgment in favor of the company for that amount, which was thereafter reduced to $9,000.

After the entry of the judgment, J. Benjamin Mattingly and wife, on the 12th day of September, 1916, executed unto Joseph L. Donovan a mortgage on said land for the sum of $1,500 to secure an indebtedness from him to Donovan. The mortgage was thereafter assigned unto Joseph C. Mattingly and W. Mitchell Digges, who, on the 17th day of December, 1917, sold thereunder the lands therein mentioned, and, with Walter Mitchell, became the purchasers thereof. Upon the ratification of the sale so made James Clark was appointed trustee to convey the lands to the purchasers, which he did, by deed dated the 27th day of August, 1918.

As we gather from the record, the land, after said sale, remained in the possession of J. Benjamin Mattingly under an oral agreement between him and the purchasers, whereby

it was agreed that the latter, at any time within one year from the day of sale, would sell and convey said land unto J. Benjamin Mattingly, or to whom he might wish, upon being paid "the amount of the Donovan mortgage, with interest on same, together with interest on the Eastern Shore Trust Company's judgment (which still remained a lien upon the lands sold), plus $1,000.00," which was spoken of by Mr. Digges as a fee to them.

That there was such an agreement between the purchasers and J. Benjamin Mattingly is not only shown by the evidence of J. Benjamin Mattingly, but also by a letter written by W. Mitchell Digges to him, which is as follows:

"La Plata, Md., June 24, 1918.
"J. Benjamin Mattingly, Esq.,
    "Laurel, Md.
"Dear Mr. Mattingly:
    "I received your two letters enclosing checks and should have acknowledged receipt before, but was uncertain as to whether or not it was proper for me to accept these checks. The agreement which we had with you in Mr. Joseph C. Mattingly's office was to the effect that upon your paying the amount of the Donovan mortgage with interest on same, together with interest on The Eastern Shore Trust Company judgment, plus $1,000.00, we would convey the Laurel property to your or whomsoever you might wish. I would therefore request that you meet me at Joe Mattingly's office at eleven o'clock next Thursday, at which time we will put the agreement in writing, and I will bring the two checks with me, which as yet I have not used.
                    "Yours very truly,
                        "W. Mitchell Digges."

In addition to the above letter, Mr. Digges testified that on the afternoon of the day of the sale, after they had returned from the sale to the office of J. C. Mattingly, Mr.

Walter Mitchell said, in the presence of Mr. Joseph C. Mattingly and Mr. J. Benjamin Mattingly, "we agreed with Mr. Benjamin Mattingly that he could either purchase the property back or make a sale of it at a sum sufficient to pay the outstanding indebtedness against it, to pay us the Donovan mortgage with interest, and a fee of $1,000.00 within one year."

The checks mentioned in Mr. Digges' letter of June 24th, 1918, which he was uncertain whether or not it was proper for him to accept until the agreement was put in writing, were, so far as we can gather from the record, for interest on the indebtedness against the property and for taxes thereon. The written agreement referred to in the letter was never, it seems, executed by the parties, nor were the checks ever returned to J. Benjamin Mattingly, as shown by the record.

The sale made by Mr. Digges and others under the mortgage was thereafter ratified and confirmed on the 22nd day of August, 1918. It appears that efforts were made by J. Benjamin Mattingly to sell the property to different parties, but it was not until the fall of 1919 that he was at all successful in his efforts. He testified that in September of that year he sold the property to the Brightwood Sanitarium Company, though the agreement of sale was not in writing, nor does it appear that the terms of sale were in detail definitely fixed and determined, but possession of the property was given the sanitarium company, and it, in December, 1919, paid to W. Mitchell Digges the interest on the indebtedness that J. Benjamin Mattingly had assumed to pay in the event of the sale of the property under the aforementioned agreement. It is true this sale was not made within the year in which it was to be made under their agreement with J. Benjamin Mattingly, but the fact that they thereafter received the interest, which was one of the essential features of the agreement, was, we think, a waiver of

the requirement that J. Benjamin Mattingly should exercise the right to purchase or sell to another within the time named in the agreement, especially in view of the subsequent conduct of said purchasers.

And it is true the purchasers at the mortgage sale thereafter entered into an agreement with Francis E. Mattingly for the sale of the property, but we think it is sufficiently shown, from the evidence in the case, that this was not done in derogation, but in furtherance of the sale already made to the Brightwood Sanitarium Company by J. Benjamin Mattingly.

The agreement or option, as it is called, gave to him the right to purchase the property at and for the sum of $11,500, payable as follows:

"1. $1,000.00 upon the signing of this option, less the following amounts, the sum of two hundred and two dollars and seventeen cents ($202.17), which has heretofore been paid on account of interest due in December, 1919, on a judgment held by The Eastern Shore Trust Co. against said property, the county and State taxes upon said property, for the levy of 1919, and the insurance premium to date, upon the insurance on the improvement upon said property.

"2. The sum of four thousand dollars ($4,000.00) on or before two months from the date of this option.

"3. The sum of five thousand dollars ($5,000.00) on or before six months from the date of this option.

"4. An amount sufficient to pay the balance of said principal sum of said $11,500 and all interest, taxes and insurance premiums to date, on or before nine months from the date of this option."

It then provided for the conveyance of said property upon a full compliance with the terms of the option, but, in default thereof, the payments made thereunder were to be forfeited and Francis E. Mattingly was to have no claim upon the property because of said payments.

On the 25th day of March, 1920, and, as claimed by Francis E. Mattingly, on the day of the execution of the option from Digges and others to him, and simultaneously therewith, he gave an option to the Brightwood Sanitarium Company to purchase said property at and for the sum of $30,-000, to be paid as follows:

"1.  $1,000 upon the signing of this option, less the following amounts: The sum of two hundred two and seventeen-hundredth ($202.17) dollars, which has heretofore been paid on account of interest on a judgment held by The Eastern Shore Trust Co. against the property.  The county and State taxes on said property for the levy of 1919, and the insurance premiums to date upon the insurance on the improvements on said property.  The said payment of insurance and taxes to be evidenced by receipts for same turned over to the said Francis E. Mattingly.

"2.  The sum of fifteen thousand dollars ($15,-000.00) in preferred stock of the Brightwood Sanitarium Co. to be delivered to the said Francis E. Mattingly.

"3.  The sum of four thousand dollars ($4,000.00) on or before two months from the date of this option.

"4.  The sum of five thousand dollars ($5,000.00) on or before six months from the date of this option.

"5.  The sum of five thousand dollars ($5,000.00) on or before nine months from the date of this option."

It, too, provided for the conveyance of said property upon a full compliance with the terms of the option agreement, but, in default thereof, the payments made thereunder were to be forfeited, and the Brightwood Sanitarium Company was to have no claim upon the property by reason of said payments.

It will be seen that the option to Francis E. Mattingly and the one from him to the Brightwood Sanitarium Company were executed several months after the sale of the property by J. Benjamin Mattingly to the Brightwood Santi-

tarium Company and the payment to Digges and others by said company of the interest above mentioned.

Stock of the company to the amount of $15,000 was issued or transferred to Francis E. Mattingly under the option agreement and the first installment of purchase money was paid thereunder to Digges and others through Francis E. Mattingly.

It was, however, claimed by J. Benjamin Mattingly that, although it appeared from the written agreement that the option to purchase the property was given to Francis E. Mattingly, it was in fact given to him or for his benefit and it was so understood at the time by the parties interested therein. After the option agreements were signed and delivered to the parties entitled to them, it was suggested by J. Benjamin Mattingly that Francis E. Mattingly should execute unto him an agreement in writing, showing that the option was given to Francis E. Mattingly as the agent, or for and on behalf, of J. Benjamin Mattingly, but this was not done and the latter, on the 24th day of May, 1920, assigned unto William E. Mattingly, a half brother, all his "right, title and interest in and to the proceeds of sale of the property, as set forth in the agreement or option, made on the 25th day of March, 1920," which was appended to and made part of the assignment. The consideration for this assignment was money borrowed by J. Benjamin Mattingly from William E. Mattingly, which was still owing to the latter, amounting, as it was stated, to more than $1,100.

William E. Mattingly on the 25th day of May, 1920, filed his bill, in the Supreme Court of the District of Columbia, against the Brightwood Sanitarium Company, Ralph E. Walker, its treasurer, and Francis E. Mattingly, alleging that the Brightwood Sanitarium Company had become the purchaser of the land hereinbefore mentioned, through an option agreement in which Francis E. Mattingly was "nominal grantor" but who in fact was merely acting as agent of J. Benjamin Mattingly, his brother; and that he, as assignee of

J. Benjamin Mattingly, was entitled to the proceeds of the sale of the property. The bill then asked that Francis E. Mattingly be restrained from receiving, and the sanitarium company from paying over to Francis E. Mattingly, any of the proceeds of the sale of said property that were yet to be paid under the option agreement.

Upon the bill, an order was passed on the said 25th day of May, 1920, requiring the defendants to show cause upon the day therein named, why the prayer of the bill should not be granted.

The record does not show that anything more was done in those proceedings, and, on the 25th day of January, 1921, the bill in this case was filed by the Brightwood Sanitarium Company against W. Mitchell Digges, Walter J. Mitchell, Joseph C. Mattingly, Francis E. Mattingly and J. Benjamin Mattingly, asking:

"1.    That the said W. Mitchell Digges, Walter J. Mitchell and Joseph C. Mattingly be compelled to convey the aforesaid property to the plaintiff under the terms of the contract of March 25, 1920.

"2.    That the said defendants, Walter J. Mitchell, W. Mitchell Digges and Joseph C. Mattingly, be declared to hold title as trustees of said property in trust for J. Benjamin Mattingly, Francis E. Mattingly or any other party entitled as beneficiaries thereunder, and that they be required to give bond in accordance with provisions of sec. 237 of art. 16 of the Code of Public General Laws of Maryland."

The bill alleged that the plaintiff, the sanitarium company, had paid the first installment of $1,000, and had delivered to Francis E. Mattingly the stock of the company, in accordance with the terms of the agreement, and that, on the 25th day of May, 1919, it was ready to pay the installment of $4,000 due on that day, but "was prevented from making said payment by reason of the injunction issued out of the Supreme Court of the District of Columbia." And that it

was then ready to fully comply with the terms of said agreement of purchase.

Upon the petition of William E. Mattingly, he was made a party defendant to the proceedings, and both he and J. Benjamin Mattingly answered the bill, while Francis E. Mattingly demurred thereto. The defendants, W. Mitchell Digges, Walter J. Mitchell and Joseph C. Mattingly also answered, but not until a decree *pro confesso* was obtained against them.

At this stage in the proceedings a decree was passed by consent of the parties, by which the Brightwood Sanitarium Company was ordered to bring into court the balance of the purchase money owing by it, with interest thereon, amounting to $14,268.34. And the decree provided that, when this amount was paid therein, the defendants, W. Mitchell Digges, Walter J. Mitchell and Joseph C. Mattingly were to convey said property and all the right, title and estate of all the defendants therein, to the Brightwood Sanitarium Company, and by the decree it was further ordered and decreed that the said sum of $14,268.34 should be paid and disposed of as follows:

1. $9,486.00 to The Eastern Shore Trust Co. in payment of its judgment against J. Benjamin Mattingly.

2. $2,896.25 to W. Mitchell Digges, Walter J. Mitchell and Joseph C. Mattingly in payment of their fee and in payment of the amount of the mortgage and interest under which the property was sold.

3. $750.00 to the Citizens' National Bank of Laurel in payment of a judgment held by that bank against J. Benjamin Mattingly.

4. "The balance of * * * $1,136.09, less costs of the case, shall be retained by the clerk of this court for a final determination of this cause as to the respective rights of J. Benjamin Mattingly and Francis E. Mattingly to the said sum."

On the 5th day of May, 1922, nearly a year after the passage of the consent decree of June 3rd, 1921, Francis E. Mattingly obtained leave of the court to withdraw his demurrer to the bill filed by the sanitarium company, and, on that day, filed his answer thereto, in which he denied that he acted as agent of J. Benjamin Mattingly in obtaining the option agreement from Mr. Digges and others for the purchase of said land and averred "that he was the real party in interest," and that he procured the option with the intention of reselling it to the sanitarium company.

The question presented in the lower court upon the petition of William E. Mattingly, and the answer thereto of Francis E. Mattingly, and the one presented in this Court upon the appeal, is who is entitled to said sum of $1,136.09, William E. Mattingly, assignee of J. Benjamin Mattingly, or Francis E. Mattingly.

The court below held that Francis E. Mattingly was entitled to it, after the payment of the costs of the proceedings, and it was from the order of the 3rd day of November, 1922, directing the clerk of the court to pay it to him, after first deducting the costs therefrom, that the appeal in this case was taken.

The inquiry should first be made, was Francis E. Mattingly acting for himself or as agent of his brother, J. Benjamin Mattingly, in procuring the option for the purchase of the land from the purchasers at the mortgage sale and in signing the option for the sale of it to the Brightwood Sanitarium Company?

To decide this question it will be necessary for us to consider the evidence found in the record reflecting thereon.

It is an undisputed fact that the purchasers of the land at the mortgage sale verbally agreed with J. Benjamin Mattingly to sell the land to him, or to any purchaser or purchasers found by him, at any time within one year from the day of the mortgage sale upon his or their paying, (1) the Eastern Shore Trust Company's judgment with interest, (2)

the amount of the Donovan mortgage and interest, and (3) $1,000 as a fee to the purchasers.

Though this agreement was orally made, the fact of its existence was thereafter acknowledged in writing by the purchasers in the letter from W. Mitchell Digges to J. Benjamin Mattingly, written on the 24th day of June, 1918.

J. Benjamin Mattingly testified that he sold the property in September, 1919, to the Brightwood Sanitarium Company and they had taken possession of it, held meetings, and had sold stock of the company, before his brother, Francis E. Mattingly, met Mr. Walker, through whom he had negotiated the sale to the company; that after the sale his brother Francis, who had, as he said, offered his services to him in the negotiation and sale of the property, without charge, went with him at his request to see Mr. Walker. In conversation with Mr. Walker, Francis E. Mattingly said to him, "I understand Benny has sold his property to you at Laurel; that is fine property, particularly so for a sanitarium," Mr. Walker, turning to witness, said, "How about terms?" and without waiting for an answer said, "I would prefer to settle for it by paying half cash and half in stock." The purchase price theretofore agreed upon being $30,000. The witness stated that he would take $18,000 in cash and $12,000 in stock. At this point in the conversation Francis E. Mattingly suggested to his brother that, if the company would give to him $15,000 in money, he would advise him to take it; and it was then agreed that $1,000 should be paid in 30 days; $4,000 in 60 days; $5,000 in 90 days and $5,000 in six months. Witness also testified that Mr. Digges had said something to him about making a transfer of the property through his brother Francis, and he had said it was satisfactory to him. Later he saw Mr. Mitchell in Washington and he referred to the sale of the land, and said to witness, he could do as Mr. Digges had said about transferring the property through his brother, provided Francis would pay the encumbrances upon it. He also stated he paid the interest

on the liens and also the taxes upon the property to the time of the sale to the sanitarium company, and thereafter the company paid the interest on the liens and taxes on the property.

J. Benjamin Mattingly further testified that when he and his brother met at the office of Mr. Walker in Washington, to sign the option agreement, he at that time being president of the company, though not president at the time of the sale of the property made by him to the company, he said to his brother that he should have something signed by him protecting his right in the property, and Francis said, "Certainly he would not do it otherwise." After the option was signed Benjamin suggested to his brother to go to the office of his attorney, Mr. Johnson, to sign such a paper. Francis said he had to go to Mr. Joseph C. Mattingly's office "right away before he goes home" and he suggested to Benjamin that he go to the office of Mr. Johnson and there wait for him, which he did. After waiting "a long while" for him he called him at the office of Joseph C. Mattingly and was told by him that he would come over to Mr. Johnson's office. He finally came, and after reading the paper handed him by Mr. Johnson, he said: "I can't sign this paper this evening," and when asked by Benjamin why, he said "Because you owe me a little money." The witness then said to him, "If you are going to charge me, what are the expenses," he said, "I can't tell you this evening, I got to think over it." Mr. Johnson then said to him, "If your brother owes you some expense money let's adjust the matter here." He was then asked if he could not meet his brother on some one of the several days suggested, and he finally promised to be at Mr. Johnson's office on Wednesday of the following week, at one o'clock. On the day appointed, Benjamin went to the office of Mr. Johnson and remained there all day, but his brother never came, nor did he ever go, and the paper was never signed. The witness said he allowed his brother "to handle the matter" because he was asked by him to do so, saying he would not charge him anything and that it was perfectly sat-

isfactory to Mr. Mitchell.  On January 1st, 1921, the witness resigned the office of president of the Brightwood Sanitarium Company.

Mr. Walker, the treasurer of the sanitarium company testified that, in the negotiations for the purchase of the property, he "dealt with Mr. J. Benjamin Mattingly and the negotiations were concluded sometime the first of December, 1919, and soon thereafter took possession"; that the first payment of the purchase money therefor, being for interest past due, was made to Messrs. Mitchell & Digges on December 30th or 31st, 1919.  He was then asked, when he first came in contact with Francis E. Mattingly and he said sometime in February, 1920; it was when "Mr. J. Benjamin Mattingly and Mr. Francis E. Mattingly came to my office and J. Benjamin Mattingly said that he had decided to let Mr. Francis E. Mattingly act for him.  Mr. Francis E. Mattingly conducted further negotiations and he closed up the property for him.  Subsequent to that, a check was given to Mr. Francis E. Mattingly for $200 plus $90, which was sent to the treasurer here for payment of the taxes, all of which came out of the first $1,000 payment.  Mr. Francis E. Mattingly brought an option to the office which he asked to have signed, because he was going to get an option from Joseph C. Mattingly, Walter Mitchell and W. Mitchell Digges for the property, and he would then sell it to us.  I raised the question that the property had already been sold to us by Mr. J. Benjamin Mattingly.  Then he produced this option, and wanted the balance of the first payment, which amounted to $500.  He said we didn't have a scratch of a pen to show that we had bought the property or had even made a payment."  He said "he could get an option on the property, but he would have to take a check down to Mitchell & Digges before he could do that.  I did not want to do that without first seeing the option from Mitchell & Digges, but later consented."  "Q. You signed up your option with Francis E. Mattingly and you furnished him with the money to get one? A. Yes, sir; he said he wanted the money to get it."  He

further testified that it was his understanding that Francis
E. Mattingly "was a go-between for his brother."

Walter A. Johnson, to whom reference has been made as
the attorney of J. Benjamin Mattingly, testified that he, at
the request of J. Benjamin Mattingly, prepared an agree-
ment to be signed by Francis E. Mattingly, which in effect
was an acknowledgment in writing that he had acquired the
option for his brother Benjamin, and was holding it for him;
that Francis E. Mattingly came to his office on the occasion
referred to by his brother, that he handed him the paper that
he had prepared at the request of his brother, and "he read
it over and said he would not sign it" and I asked him "why
* * * he said * * * Benny owed him some money for ex-
penses. I asked him what they were, he said, 'I don't know.'
Mr. J. Benjamin Mattingly said, 'But you promised to do
this for nothing.' * * * Mr. Francis E. Mattingly said,
'Benny, I'm not charging you anything, but I want expenses
for coming up here.' I proposed that they meet again at my
office and Mr. Francis E. Mattingly promised to come again
on Wednesday. Q. Did he come? A. No, sir. Q. Did he
ever come? A. No, sir. Q. Did he ever sign that agree-
ment? A. No, sir."

W. Mitchell Digges who, it seems, acted for the purchasers
in the resale of the property bought by them at the mortgage
sale, testified that J. Benjamin Mattingly tried to sell the
property to a number of persons, but it was not sold until
1919, "and then he sold it to the Brightwood Sanitarium
Company." In 1919, he met Mr. Walker in Washington.
Mr. Francis E. Mattingly was present, the terms of the sale
to the sanitarium company were discussed, and it was agreed
that $1,000 were to be paid on January 1st, 1920, but the
agreement was not reduced to writing. At that time there
was nine months' interest due on the Eastern Shore Trust
Company's judgment. A check for $202 was given to him
by Walker and the balance was to be paid in January follow-
ing.

Francis E. Mattingly, in his evidence, denied that he went to his brother in relation to the sale of the property, but stated his brother came to him in "dire need," but nowhere does he deny in specific terms the statement of his brother and others, that he was not to charge for his services.  He stated that he loaned his brother two hundred dollars to enable him to pay interest on debts that were liens on the Laurel property, and that he also paid insurance thereon, that he could recall, amounting to fifty-one dollars.

In speaking of the option agreement to him and the one from him to the sanitarium company, he said "it was a simultaneous transaction"; that "it was up to him to see that these gentlemen complied with the terms of the transaction"; that Mitchell & Digges held him responsible for the performance of the terms of the agreement.  When asked about his refusal to sign the paper writing prepared by Mr. Johnson, he said he "read the paper and asked, when did this happen" and refused to sign it.  That was all, it seems, he said concerning it on that occasion.  Later, on the same day, he saw his brother at the Atlantic Hotel, in Washington, and in discussing the transaction with him said he would sign nothing until he had consulted with his attorney at La Plata.

Upon cross-examination he was asked the direct question, "Was it for his (J. Benjamin Mattingly's) profit that you took this option, or for your own?  A. It is not true if you say I took it for my own profit, you are doing me an injustice, I entered into the whole transaction solely for his benefit."

It is fully shown from the evidence that Mr. Digges and others, purchasers of the property at the mortgage sale, gave to J. Benjamin Mattingly the right to purchase, or sell it to another, upon the terms stated, within one year from the date of sale; and in the exercise of that right he was not only allowed to remain in possession of the property, but he paid to the vendors the interest on the indebtedness against the property, as well as the taxes and insurance thereon, to the time of its sale by him to the Brightwood Sanitarium Com-

pany, when possession of the property was given to it. There-
after the interest, taxes and insurance were by said company
paid to and received by Mr. Digges and others in recognition
of the said optional right given by them to J. Benjamin Mat-
tingly. And although the written option to purchase the
property was thereafter given in the name of Francis E. Mat-
tingly, the terms contained therein were those that had been
fixed and established by J. Benjamin Mattingly at the meet-
ing with Mr. Walker and Francis E. Mattingly in February,
and a part of the consideration named in the option was the
amount paid by the sanitarium company in part payment of
the purchase money under the sale made to it by J. Benjamin
Mattingly months before the execution of the option. There-
after all other payments on the purchase money were made
with money received from the Brightwood Sanitarium Com-
pany under the sale made to it.

The evidence also shows that, although the option from
Mr. Digges and others was taken in the name of Francis E.
Mattingly and the option to the Brightwood Sanitarium
Company was signed by him, he nevertheless was acting
therein for and on behalf of his brother Benjamin, and for
his benefit; and consequently the profit, if any, accruing
from the purchase and sale of the property; belonged to Wil-
liam E. Mattingly, as assignee of his brother, subject to any
money paid or advanced by Francis E. Mattingly, for author-
ized or needed expenses and advancements growing out of
and immediately connected with the transaction, but not sub-
ject to compensation for services rendered by him, or for
money owing to him by his brother, not growing out of and
immediately connected with the transaction. And in so hold-
ing we do not, upon the facts of this case, in any way infringe
upon any rule of law as to resulting trusts laid down in *Dor-
sey* v. *Clarke,* 4 H. & J. 556; *Cecil Bank* v. *Snively,* 23 Md.
253; *Giese* v. *Pakendorf,* 137 Md. 675; *Dixon* v. *Dixon,*
123 Md. 44, and other cases.

It is said in 40 *Cyc.* 2812, where services are rendered
with the understanding that they are to be gratuitous, the

law does not raise an implied promise to pay therefor, no matter how valuable the services may be; and in the note thereto, it is stated that where the services are performed or use given by one person to another with the intent that no charge shall be made therefor, and are accepted on that theory, the one furnishing the services or use cannot subsequently, upon changing his mind, recover therefor. And it is also stated in 28 *Ruling Case Law,* 670, that no binding promise to make compensation for personal services can be implied or inferred in favor of one person against another, unless the party furnishing the services then expected, or had reason to expect, compensation from the other party. Assumpsit cannot be based on a spontaneous and unasked service rendered through kindness or other motive, and not to be accounted for on the theory of an expectation of payment. This is but the corollary of the general principle in the law of contracts that all contracts must be good or bad in their original creation, and must not depend on subsequent contingencies. Liability for services cannot hinge on whether the party chooses at a future date to make them a gift or a charge. Thus where a person renders services under an express assurance that he will make no charge, he cannot recover therefor on the ground that he would have made a charge had he not believed that another agreement between the parties would have been carried out.

There is found in the record some evidence of the fact that Francis E. Mattingly paid for his brother Benjamin taxes and insurance on property of the latter, but whether it was upon the property here involved, or was paid in connection with the transaction mentioned, or whether it was repaid to him, is not shown. There is also evidence that Francis E. Mattingly paid for his brother Benjamin interest on the indebtedness against the Laurel property, and that he paid, or was responsible for the payment of, certain counsel fees to Hamilton & Hamilton, attorneys of Washington, D. C.; but it is not shown that these payments were made in connection with the transaction wherein he was acting for his brother,

J. Benjamin Mattingly. In respect to the counsel fees mentioned, J. Benjamin Mattingly testified that the attorneys named represented Francis E. Mattingly and Messrs. Mitchell & Digges.

In view of what we have said we will reverse the decree appealed from and remand the case, in order that evidence may be taken, if desired, showing the amount of money, if any, paid or advanced by Francis E. Mattingly for authorized or needed expenses and advancements growing out of and immediately connected with the aforesaid transaction with his brother, and that an order may be passed in conformity with this opinion.

> *Decree reversed and cause remanded, the costs in this Court to be paid by Francis E. Mattingly, the costs in the lower court to await the final decision therein.*