PRINCE GEORGE'S COUNTY, MARYLAND *v.*
CHILLUM-ADELPHI VOLUNTEER FIRE
DEPARTMENT, INC., ET AL.

[No. 215, September Term, 1974.]

*Decided June 27, 1975.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Michael O. Connaughton, Associate County Attorney,* with whom were *Joseph S. Casula, County Attorney, Ellis J. Koch* and *Barbara Lampe, Associate County Attorneys,* on the brief, for appellant.

*William L. Kaplan,* with whom were *Kaplan, Smith, Joseph, Greenwald & Laake* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

As every resident of this State who lives outside of the urban areas of the State knows, volunteer firemen perform an important and necessary service. Without them property in such areas would be unprotected from the ravages of fire and in extinguishing fires people would be reduced to use of the archaic methods of a bygone era.

The population of Prince George's County has grown from 60,095 in 1930 to 661,192 in 1970. The "growing pains" resulting from that increase in population have been reflected in more and larger volunteer fire companies and controversy between those fire companies and the County government relative to funds. This case and its predecessor, *Chillum-Adelphi v. Pr. George's Co.*, 269 Md. 486, 307 A. 2d 481 (1973), result from those controversies.

By Chapter 628 of the Acts of 1963, § 32-17 of the Code of Public Local Laws of Prince George's County was enacted declaring "[a]ll existing nonprofit incorporated volunteer fire companies . . . operating in Prince George's County . . . to be an instrumentality of Prince George's County and/or the municipality in which they operate . . . ." [1] Disputes relative to the interpretation of this law produced suits for declaratory relief on behalf of a number of the volunteer fire companies. Prince George's County (the County) was named defendant. When the County Charter (the Charter) became effective on February 8, 1971, certain provisions in it further fanned the flames of controversy as the result of which yet other questions were brought to the attention of the court. In all, four suits were filed with all of the volunteer fire companies of Prince George's County involved as parties.

In *Chillum-Adelphi* we invoked Maryland Rule 871 a and remanded the case for a determination of the constitutional issues presented. On the remand the trial court declared § 32-17 "to be null and void, being contrary to the Constitutions of Maryland and the United States of America . . . ." In all other respects it "ratified and incorporated by reference" in its decree "the declaratory opinions and orders of th[at] Court filed in th[o]se cases on April 14, 1972 and November 3, 1972 . . . ." It directed the payment of a substantial fee to counsel for the fire companies. The County and the fire companies appealed.

We were advised at argument of this appeal that the

---

1. We are advised that this statute was originally passed in order that lending institutions might give a more favorable interest rate for monies borrowed by these volunteer fire companies for the construction of firehouses, etc.

County and the fire companies reached an agreement by which the County no longer claims the assets of the fire companies and the matter of counsel fees has been resolved to the satisfaction of the parties so that those two issues are no longer before us.

The parties and the trial judge (McCullough, J.) formulated the issues to be decided by the trial court, all of which were numbered. In the earlier appeal we had before us issues 1, 3, 8, 9, 13, 19, and 22. The parties apparently found no fault with the decision of the trial judge on the remaining issues. The briefs in this appeal, although not designating the issues as precisely as they were designated in the former appeal, stated that the same points were before us in addition to the issue pertaining to attorney's fees. Issue 1 concerned the claim of the County that under the provisions of § 32-17 it was vested with title to all of the assets of the volunteer fire companies. We shall set forth the remaining issues as they are discussed.

### Issues 3, 9, 13, and 22

Issues 3, 9, 13, and 22 are interrelated. As framed by the parties, with the answers stated in the court's decree, they are as follows:

"ISSUE III: DOES NOT THE CHARTER'S SCHEDULE OF LEGISLATION IN PARAGRAPH 14 THEREOF CREATE IN PRINCE GEORGE'S COUNTY TWO FIRE DEPARTMENTS, i.e., A COUNTY FIRE DEPARTMENT AND THE VOLUNTEER FIRE SERVICE EMBODIED BY THE VARIOUS INDEPENDENT PRIVATE CORPORATIONS?"

"Issue Number III: The Charter of Prince George's County does not create a second firefighting *system* in Prince George's County." (Emphasis added.)

"ISSUE IX: ARE THE PLAINTIFFS IN THIS CASE, i.e., THE INDEPENDENT VOLUNTEER FIRE DEPARTMENTS OF PRINCE GEORGE'S COUNTY, STILL INDEPENDENT CORPORA-

TIONS SOLELY RESPONSIBLE FOR THEIR OWN DAY-TO-DAY OPERATION OF THEIR RESPECTIVE DEPARTMENTS: ARE THEY, IN ADDITION, RESPONSIBLE FOR THE SUPERVISION AND CONTROL OF SAID PERSONNEL, AND DO THEY HAVE FIRE GROUND CONTROL: OR, DOES THE COUNTY HAVE THE RIGHT TO PROMULGATE AND ENFORCE RULES AND REGULATIONS BINDING UPON THE UNPAID VOLUNTEER PERSONNEL OF THE PLAINTIFF FIRE COMPANIES, AND DOES THE COUNTY HAVE THE RIGHT TO DIRECT, CONTROL AND SUPERVISE THE PLAINTIFF FIRE COM-PANIES' UNPAID VOLUNTEER PERSON-NEL, OFFICER OR OTHERWISE, IN THE PER-FORMANCE OF THEIR DUTIES AS VOL-UNTEER FIREMEN, TO SUCH A DEGREE THAT THE OPERATION OF THE PLAINTIFF FIRE DEPARTMENTS, THEIR PERSONNEL, AND FIRE GROUND CONTROL ARE SUBJECT TO THE DIRECTION AND CONTROL OF PRINCE GEORGE'S COUNTY AND/OR ITS FIRE CHIEF?"

"Issue Number IX: The independent volunteer fire departments are subject to the direction and control of Prince George's County and/or its fire chief."

"ISSUE XIII: ARE THE PLAINTIFF FIRE COMPANIES AGENCIES OF THE COUNTY AS DEFINED BY SECTION 1017 (M) OF THE PRINCE GEORGE'S COUNTY CHARTER?"

"Issue Number XIII: The Plaintiff fire companies are agencies of the County government."

"ISSUE XXII: IS THE COUNTY EMPOWERED TO INSPECT, AUDIT, AND COPY ALL THE ACCOUNTS, RECORDS AND BOOKS OF THE PLAINTIFF FIRE COMPANIES?"

"ISSUE XXII: Prince George's County is empowered to inspect, audit and copy all of the accounts, records and books of the plaintiff fire companies having to do with the receipt and disbursement of County budgeted funds only."

These issues might well be reframed:

   a. Does Prince George's County have the power to control the activities of the volunteer fire companies, and, if so, to what extent?
   b. Does Prince George's County have the right to audit the books of the volunteer fire companies, and, if so, to what extent?

In formulating answers to questions such as those posed here it must be remembered that even in declaratory judgment actions authorized by what is now Code (1974) §§ 3-401 to 3-415 of the Courts and Judicial Proceedings Article (formerly Code (1957) Art. 31A) courts will not answer "purely theoretical questions or questions that may never arise." *Liss v. Goodman,* 224 Md. 173, 177, 167 A. 2d 123 (1961). *See also Pr. George's Co. v. Bd. of Trustees,* 269 Md. 9, 12, 304 A. 2d 228 (1973).

### a. Control

The current controversy revolves around the rights and obligations of the County and the fire companies as the result of the adoption of the Charter. In the schedule of legislation adopted with the Charter § 14 provided for "a Fire Department headed by a Fire Chief." The department so provided was to "be responsible for fire prevention, fire suppression, fire and rescue communications, research and training activities, and coordination of the volunteer fire companies." The Charter further provided for a fire commission "composed of nine members elected by the volunteer fire companies of Prince George's County," which commission was to "review the financial needs and requests for public funds of each volunteer fire company" and to "formulate annually one capital budget, one capital

improvement program, and one current expense budget for all volunteer fire companies with respect to the expenditure of public funds, and [to] submit said budgets and program, together with appropriate justification, to the County Executive in accordance with the provisions of [the] Charter."

One thing upon which the parties here can agree is that disputes arose as to control, as the fire companies put it in their brief, "both operational, budgetary and administrative." Section 32-18 of the Prince George's County Code, as enacted by Chapter 437 of the Acts of 1965, authorized a fire tax of 4 cents upon each $100 of assessed valuation to be levied by the county commissioners (except for the area of the County within the limits of the City of Takoma Park), the proceeds of which were "to be expended by such fire companies for the purpose of providing that a minimum of two (2) paid firemen in each fire station [should] be employed on a full-time basis at salaries to be determined by the Board of County Commissioners." Chapter 745 of the Acts of 1966 repealed § 32-18 and enacted a new subsection in its stead. It provided for a fire tax in the amount of 10 cents upon each $100 to be appropriated "for the employment of at least two additional full-time paid firemen in each fire station validly in existence in Prince George's County, the acquisition or leasing of land or facilities for new fire house sites and training facilities, and to supplement financial needs of fire companies based on budget review." The section as then enacted further provided for these "[f]ull-time paid firemen [to] be under the direct supervision and control of the individual fire company chief during working hours." Peripherally, there are conflicting contentions here as to whether § 32-18 remains viable after the adoption of the Charter, a contention which we need not answer for the purposes of this case.

The County contends that the volunteer fire companies "are instrumentalities of the County such that the fire chief of [the] County . . . has the power and authority to direct and control the day to day activities and internal operations

of the volunteer fire companies." This argument is based on the fact that "the basic duty of fire suppression necessary to protect the health and welfare of the public" is a part of the police power vested in the County.

Some of the opposition from the fire companies comes from their dislike of the budgetary procedures of the County. Accordingly, some of the fire companies, as it is put in their brief, "in an effort to remove themselves from what they contended were arbitrary and capricious budgetary and other controls imposed by the [County], notified the [County] of their intention not to submit to these budgetary procedures, but instead to demand compensation, by way of contract or on principles of *quantum meruit,* for the services they might be called upon by the [County] to render subsequent to July 1st, 1972." [2] The County claims:

> "To permit a volunteer company to escape County governmental control by refusing to accept public funds is to permit a private corporation to perform governmental functions contrary to the directives of the governmental authority itself. There is nothing in the County Charter which conditions control on the acceptance of funds by volunteer companies. Simple reflection upon the proposition that control is contingent only upon financing with the determination to accept or reject that financing at private discretion should demonstrate its untenability."

It goes without saying that in the absence of some provision of law to the contrary, constitutional or statutory, the County may impose such conditions as to it appears proper upon those who wish to receive County funds including a direction as to the manner of expenditure of those funds. In this instance no provision of law to the contrary has been cited or found. The issues here go deeper, however. The contentions of the County carried to their logical extreme would seem to be that because protection

---

2. This claim under *quantum meruit* is discussed as issue 19.

from fires is a part of the police power its control of the volunteer fire companies extends down to how often nozzles owned by a fire company are to be shined and whether a fire company's own funds may be spent for a repast for those returning from a fire, while the contentions of the fire companies carried to their logical extreme would go so far as to say that the Prince George's County Fire Chief, or "super chief," as some have dubbed him, has no control whatever over them at the scene of a fire, no matter how extensive the conflagration may be. We see the answer as lying in what might be called the middle ground between the respective contentions.

It is beyond dispute that the police power which has been delegated to charter Counties by Code (1957, 1973 Repl. Vol.) Art. 25A, § 5 (S), *Mont. Citizens League v. Greenhalgh*, 253 Md. 151, 161, 162, 252 A. 2d 242 (1969), includes the power to regulate private business to the extent necessary to protect the public health, safety, morals, and welfare. Accordingly, the County and the Prince George's County Fire Chief, who has a responsibility under § 14 of the schedule of legislation for "fire prevention" and "fire suppression," have the power to reasonably regulate these volunteer fire companies to protect the public health, safety, morals, or welfare. Whether or not a given regulation is within the scope of this power is not before the Court in this case. We can only set forth the standard which will control the resolution of any future dispute as to a given regulation.

We have been cited to no authority under which the County could prescribe budgetary procedure or policy to a volunteer fire company which does not accept County funds. However, if a given volunteer fire company elects to accept County funds, then it follows that the County may impose conditions on the granting and use of those funds, *e.g.*, that the company's books would be kept in a certain manner, that the funds granted would be only expended for certain specified purposes, and that to assure the County of this fact the company's books would be subject to audit by persons designated for that purpose by the County. Indeed, the County might well specify that no part of the funds would be

expended for new equipment without advance approval of the County, might say what type of equipment could be purchased with funds from the County, and might provide for the manner of maintaining equipment purchased with County funds. In other words, the County may impose reasonable regulations relative to the funds which come from it. On the other hand, if a volunteer fire company does not accept County funds, it is only subject to such regulations of the County as may be imposed under the police power.

Where two constructions of statutory language are possible courts will prefer the construction which will result in the legality and the effectiveness of the statutory provision being construed, rather than to adopt a construction which would make such provision illegal and nugatory. *See, e.g., District Land v. Wash. S. S. C.,* 266 Md. 301, 312, 292 A. 2d 695 (1972), and *Deems v. Western Maryland Ry.,* 247 Md. 95, 113, 231 A. 2d 514 (1967). Section 14 of the schedule of legislation *created* a Prince George's County Fire Department. To say that there is only one fire department in the County would be to say that the volunteer companies were subsumed by the Prince George's County Fire Department, that they had lost their independent status, and were now mere appendages or parts of the County department. Such a construction would be unconstitutional because it would provide for a taking of private property without just compensation. The chancellor was "of the opinion that the Charter did not create a second fire fighting *system* in Prince George's County, rather its purpose is to bring all the volunteer companies together under one fire chief." (Emphasis added.) He pointed out that the language of the charter "speak[s] of a fire department headed by a fire chief who shall be responsible for fire prevention and the coordination of the volunteer fire companies."

The chancellor was right. The fire chief is clearly in control and has the right to direct operations at the scene of any fire including specifying what types of equipment and what fire fighting methods should be used. Of course, any

directions he gives may well pass through a chain of command, but he would remain as the person in control and ultimately responsible. In the interest of protecting the public safety by fighting fires by the most efficient means he might well prescribe the training required for persons in the chain of command such as chiefs and assistant chiefs of volunteer fire companies. On the other hand, the volunteer fire companies remain as separate entities. The fact that the chief is in control of fire fighting would not give him the right to prescribe how volunteer fire companies could spend their own money or dispose of their own assets, nor could he prescribe on what night of the week or at what hours these volunteer fire companies might meet. His control certainly would extend to imposing limitations upon the speed of fire engines proceeding to and from fires and to specifying the training and duties of paid firemen assigned to the volunteer fire companies since all of this would be directly related to the fighting of fires. However, his powers would not go so far as to say that *volunteer* firemen not then fighting a fire could not engage in a friendly game of pinochle at the firehouse or watch a sports event there on television.

#### b. Right to Audit

The Charter states in § 1017 (m):

> "(m) The word 'agency' when used to designate a subordinate element of government shall be construed as including all offices, departments, institutions, boards, commissions, and corporations of the County government and, when so specified, all offices, departments, institutions, boards, commissions, and corporations which receive or disburse County funds."

In § 313 the Charter provides for an Office of Audits and Investigations. The section says that "[a]ll records and files pertaining to the receipt and expenditure of County funds by all officers, agents, and employees of the County and all agencies thereof, shall at all times be open to the inspection of the County Auditor." There is no question but what

County funds have been received in the past by all of these volunteer fire companies. County funds are being received by some of them, but not all of them, at the present time, and all of them are desirous of knowing upon what basis or under what restrictions County funds may be paid to them.

In *Prince Geo's Co. v. Bd. of Trustees*, 271 Md. 21, 313 A. 2d 678 (1974), we were concerned with other growing pains of Prince George's County and an interpretation of its Charter as applied to the Prince George's Community College. Relative to agencies and § 1017 (m) of the Charter, Judge Digges said for the Court:

"It is apparent that this definition [in § 1017 (m)] establishes two separate tests for determining whether the charter intends to treat a particular subordinate element of government as an 'agency.' To paraphrase § 1017 (m), an institution would be an agency either if it is one of the enumerated elements of the county government or if it is appropriately 'specified' to be an 'agency' for the purpose of applying the provisions of the charter to it. This second test would seem to permit the county to specify by legislation that a particular non-county office, department, institution, board, commission or corporation which receives and disburses county funds is an 'agency,' when to do so would not create a conflict with or violate any valid state statute. *Cf. Montgomery County v. Yost*, 223 Md. 150, 162 A. 2d 462 (1960). In applying these tests to the case now before us, it is clear that the community college does not meet the first criterion since it is certainly not an institution, board, or corporation *of the county government* but is one created and controlled by the State. Art. 77A, §§ 1-10. *Cf. Bd. of Ed. v. Montgomery County*, 237 Md. 191, 205 A. 2d 202 (1964). Therefore, to be an 'agency' controlled by the provisions of the charter, the college must have been 'so specified' in an appropriate manner. As the college is not

designated either by the budget and bond ordinances involved in this litigation or in any other lawful manner, we hold that for the purposes of the contracts which are here in dispute the college is not an 'agency' required to comply with the provisions of either § 508 or § 822 of the county charter. This is true without regard to the fact that to specify the college as an 'agency' might very well be a nugatory act since such a designation may create an irreconcilable conflict with a valid state law and therefore be void." *Id.* at 26-27. (Emphasis in original.)

The volunteer fire companies are not departments or offices of the county government, despite the fact that they may be an integral part of its fire fighting system. Accordingly, they do not come within the first definition. If the appropriations to these volunteer fire companies specify them as agencies, then they would come within the purview of § 1017 (m). The County Auditor then would have the right to ascertain that the funds appropriated by the County for the volunteer fire companies were spent for the purposes designated. If a condition of the appropriation was that the volunteer fire companies allow a full audit of their books and records, then obviously the auditor could fully audit. Otherwise, he could not.

### Issue 8

This issue as framed by the parties, with the answer stated by the trial judge in his decree, is:

"ISSUE VIII: IS PRINCE GEORGE'S COUNTY UNDER A LEGAL DUTY TO PAY TO EACH FIRE DEPARTMENT THEIR APPROPRIATED TAX FUNDS FOR ALL CONTRACT PAID MEN FOR THE PERIOD OF FEBRUARY 8, 1971 TO AND INCLUDING JUNE 30, 1971."

"ISSUE VIII: Prince George's County is not under a legal duty to pay to each fire department their appropriated tax funds for all contract paid men for

the period of February 8, 1971, to and including June 30, 1971."

By § 32-18 of the Prince George's County Code fire taxes had been levied and provision was made for payment of full-time firemen. The chancellor summarized this contention:

"The Court finds as a fact that Prince George's County, hereinafter called County, had a written agreement with the plaintiff fire companies which was effective July 1, 1966. . . . The agreement in essence authorized the County to withhold from levied fire tax monies sufficient funds to cover the cost of all wages and salaries for the paid firemen. The Court is concerned here with the period of July 1, 1970 through June 30, 1971.

"The parties agree that the County did in fact collect the special fire tax money that was levied for fiscal 1970-71 and, in fact, did withhold from this revenue collection sufficient funds to pay the contract firemen during that fiscal year. The plaintiff fire companies allege that the County should have paid the contract men out of funds other than the fire tax funds for the period February 8, 1971 through June 30, 1971, and that the fire tax monies withheld to pay the firemen for this period should be paid over to the plaintiff fire companies.

"The Court is not quite sure why the plaintiff fire companies select the starting date of February 8, 1971. In reviewing the Charter, the only time that the date of February 8, 1971, is mentioned is in the foreword to the Charter which mentions February 8, 1971, as the date that the first County Executive and the additional members of the County Council shall assume their offices. The Court cannot find that this date is significant when considering the issue before it.

"The Court finds that the contractual agreement

between the fire companies and the County with respect to the withholding of fire tax funds to pay contract firemen continued for the entire fiscal year, that is from July 1, 1970 through June 30, 1971. The Court can find no reason to require the County to pay the firemen on a different basis for the period February 8, 1971 through June 30, 1971.

"Accordingly, the Court finds that the answer to Issue VIII is in the negative."

We do not find any error of fact or law in his opinion.

### Issue 19

This issue as framed by the parties, with the answer stated in the decree, is:

"ISSUE XIX: ARE THE PLAINTIFF INDEPENDENT CORPORATIONS ENTITLED TO COMPENSATION FROM PRINCE GEORGE'S COUNTY FOR THE USE MADE BY PRINCE GEORGE'S COUNTY OF THE STATION HOUSES AND EQUIPMENT OWNED BY THE PLAINTIFFS, AND IS PRINCE GEORGE'S COUNTY ENTITLED TO COMPENSATION FROM THE PLAINTIFF CORPORATIONS FOR THE USE OF PUBLIC OR COUNTY PROPERTY IN THE PERFORMANCE OF THEIR CORPORATE FUNCTIONS? "

"ISSUE XIX: The plaintiff independent corporations are not entitled to compensation from Prince George's County for the use made by Prince George's County of the station houses and equipment owned by the plaintiff fire companies and Prince George's County is not entitled to compensation from plaintiff corporations for the use of public or county property in the performance of their corporate functions."

After July 1, 1972, some of the volunteer fire companies refused to accept funds from the County because they did not wish to submit to the control of the County. The County apparently had required certain "operational, budgetary

and administrative" procedures as a condition precedent to the grant and use of County funds which they found objectionable. They reason now that they should be able to collect on a *quantum meruit* basis for the services they have rendered the citizens of the County in the intervening period for protection of their property, a concept hardly in keeping with the tradition of their being volunteers.

The trial judge in the course of his opinion said:

"The crux of this issue is the volunteer fire departments' claim against Prince George's County for the reasonable value of the fire fighting service they provided from July 1, 1972, to the present. As of last July 1st, some of the fire companies refused to accept funds from the County. The plaintiff fire companies rely on the theory of *quantum meruit* in seeking this compensation.

"Black's Law Dictionary translates *quantum meruit* from the Latin to 'as much as he deserves.' This allows recovery for work done or for services rendered. In an action of this sort, however, 'it is necessary for plaintiff to show an agreement to pay for the services, either express or implied from the circumstances.' *Eisenberg, Admin. v. Air Cond., Inc.*, 225 Md. 324, 336, [170 A. 2d 743] (1961).

"While plaintiffs may be able to show that they manifested their intention to seek compensation for their services, they fail in their attempt to show an implied agreement to pay by Prince George's County.

"Ordinarily, an agreement to pay can be implied where services have been performed and the benefits accepted by the defendant. *Jarka Corp. of Balto. v. Pennsylvania R. Co.*, 42 F. Supp. 371, 376 (D.C. Md. 1941). The important qualification to this rule is stated in *Cleaves v. Sharp & Dohme, Inc.*, 166 Md. 546, 554 [, 171 A. 374] (1934):

'This obligation cannot be implied when the circumstances do not support an inference of

expectation of the parties that there would be payment.'

"No matter how clearly the plaintiffs expressed their intention to be paid, the County, by refusing to fund the fire companies with tax dollars unless they agreed to County control, was equally clear in its intention to make no payment for whatever services might be rendered.

"The volunteer fire departments were aware that the County intended not to pay them. They performed their fire fighting services anyway.

"It can only be said that they were either performing unwanted services, for which recovery is barred by the case of *Thompson v. U.S.*, 308 F.2d 628, 633 (9th Cir. 1962), or the services were rendered gratuitously, in which case 'the law does not raise an implied promise to pay no matter how valuable the services may be.' *Mattingly v. Mattingly*, 143 Md. 227, 243, [122 A. 40] (1923).

"A case which answers the problem best and is precisely on point is the Pennsylvania case of *Gerson v. City of Philadelphia*, [342 Pa. 552,] 20 A. 2d 283 (1941).

"The plaintiff in that case, a paid Philadelphia fireman, was stricken from the rolls of the department for lying about his age in his application for the job. He continued to work without pay while appealing this decision. It was upheld on appeal. He later tried to recover these wages under the theory of *quantum meruit*. The Supreme Court of Pennsylvania ruled that he could not recover under this theory for services he voluntarily rendered pending appeal.

"Such is the case here. The volunteer fire companies will not be allowed to recover under the theory of *quantum meruit* for services they voluntarily provided the citizens of Prince George's County after July 1, 1972.

"Accordingly, Issue XIX is answered in the negative."

We adopt that portion of his opinion.

*Decree, as modified herein, affirmed; Prince George's County to pay the costs.*