ROBERT H. CAMPBELL ET UX. *v.* THE MAYOR AND
ALDERMEN OF THE CITY OF ANNAPOLIS

[No. 3, September Term, 1980.]

*Decided January 16, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Theodore G. Bloom,* with whom were *Goodman, Bloom & Cohen* on the brief, for appellants.

*Richard G. Anderson, City Attorney,* and *Richard T. Wright, Assistant City Attorney,* with whom was *Roger A. Perkins, Assistant City Attorney,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The issue in this case concerns the validity of a license fee imposed by an incorporated municipality upon operators of residential rental units, in light of restrictions imposed by Article XI-E, § 5, of the Maryland Constitution.

Article XI-E, § 5, provides that no municipality "shall levy any type of tax, license fee, franchise tax or fee" not in effect on January 1, 1954, unless the General Assembly gives "express authorization" for the tax or fee.[1]

---

1. The complete text of the pertinent portion of Art. XI-E, § 5, of the Maryland Constitution is as follows:

"No such municipal corporation shall levy any type of tax, license fee, franchise tax or fee which was not in effect in such municipal corporation on January 1, 1954, unless it shall receive the express authorization of the General Assembly for such purpose, by a general law which in its terms and effect applies alike to all municipal corporations in one or more of the classes provided for in Section 2 of this Article."

Subsequent to 1954, the City of Annapolis enacted a scheme for the regulation and licensing of rental dwellings. Included in this regulatory plan is a provision for inspections by city officials to determine whether rental units comply with city ordinances. Annapolis City Code, § 12-9.[2] Section 12-16 of the Annapolis City Code provides for licensing residential rental units, including an annual license fee of ten dollars per unit.[3]

Petitioners Robert H. Campbell and Annie Jane Campbell own and operate certain residential rental units located in Annapolis, but they refused to obtain an operator's license as required by § 12-16. The Mayor and Aldermen of Annapolis sought a mandatory injunction in the Circuit Court for Anne Arundel County, requiring that the Campbells comply with the licensing provisions of § 12-16 and permit access to the properties for inspections pursuant to § 12-9. The Campbells responded by asserting that the licensing provisions in § 12-16 of the City Code. were invalid on three grounds: (1) they unreasonably discriminated against owners of residential rental property in violation of the Fourteenth

---

**2.** Section 12-9 states in relevant part:

"Inspection and access to dwellings; notice of violations.

"The city engineer and the city health officer, or their duly authorized representatives, are hereby authorized and directed to make inspections of dwellings, dwelling units, rooming units and premises located within the city to determine whether the conditions of the same comply with the provisions of this article. The owner or occupant of every dwelling, dwelling unit and rooming unit, or the person in charge thereof, shall, upon proper identification being made, give to the city engineer or the health officer, or their duly authorized representatives, free access to the premises and all parts thereof, at all reasonable times, for the purposes of such inspection, examination and survey."

**3.** The relevant portions of § 12-16 are:
"Licensing of operation of certain dwellings and rooming houses.

"(a) No person shall operate a single rental dwelling unit, multiple dwelling or rooming house unless he holds a current, unrevoked operating license issued by the city clerk, after the application for said license shall have been approved by the city engineer, with the concurrence of the health officer, in his name for the specific named dwelling or rooming house.

\* \* \*

"(f) The operating license fee shall be ten dollars ($10.00) annually, per dwelling unit which shall be payable in advance of issuance of the license or renewal thereof."

Amendment; (2) they were not authorized by the Annapolis City Charter; and (3) they violated Art. XI-E, § 5, of the Constitution of Maryland, which prohibits municipalities from levying "any type of tax, license fee, franchise tax or fee" without express authorization from the Legislature. The case was submitted to the circuit court upon the pleadings and a stipulation of facts, which disclosed that the dispute between the parties related solely to the validity of the § 12-16 licensing plan. There was no indication that the City had ever sought to conduct § 12-9 inspections or that the Campbells had refused a request to conduct inspections.

In a memorandum opinion, the circuit court held that the City of Annapolis was entitled to the requested injunctive relief. The court ruled that the City Charter contained broad police powers, including the authority to enact the licensing scheme. Defendants' Fourteenth Amendment equal protection argument was rejected because the court found a rational basis for the City's treating rental housing differently than other real property. As to the Campbells' challenge to § 12-16 on state constitutional grounds, the court assumed that Art. XI-E, § 5, of the Maryland Constitution required authorization by the General Assembly of the license fee imposed by § 12-16, since that ordinance had been enacted subsequent to January 1, 1954. The court found the necessary legislative authorization in Maryland Code (1957, 1973 Repl. Vol., 1980 Cum. Supp.), Art. 23A, § 2, together with Art. 23B, § 22 (33). Section 2 of Art. 23A grants municipalities the general power to pass ordinances for the "preservation and promotion of the health, recreation, welfare and enlightenment of its inhabitants." Art. 23B is a model charter for incorporated municipalities, and § 22 (33) of that charter relates to licensing and regulating schemes and the collection of license fees. The court made no findings regarding the purpose of the annual license fee imposed by § 12-16 (f). Thereafter, an injunction issued ordering the Campbells to procure operating licenses for the rental units they owned and to allow city agents access to the rental premises to conduct inspections pursuant to § 12-9.

The Campbells appealed to the Court of Special Appeals, challenging both the trial court's holding that the license fee provision of § 12-16 (f) does not violate Art. XI-E, § 5, of the Maryland Constitution, and that portion of the injunction ordering allowance of § 12-9 inspections of the rental premises. The Campbells did not pursue their claims that the City lacked charter authority to enact a licensing scheme or that the scheme is invalid under the Equal Protection Clause of the Fourteenth Amendment.

The Court of Special Appeals upheld the validity of the § 12-16 license fee on different grounds than those of the trial court. *Campbell v. City of Annapolis,* 44 Md. App. 525, 409 A.2d 1111 (1980). The intermediate appellate court held that Art. XI-E, § 5, only prohibits the levy of a license fee without General Assembly authorization if the primary purpose of the fee is to raise revenue, and that a fee imposed as part of a regulatory scheme is not covered by § 5. The Court of Special Appeals found that the fee imposed by § 12-16 (f) was part of a regulatory plan and was not for the purpose of raising revenue. Thus, under that court's interpretation of Art. XI-E, § 5, the license fee did not require the General Assembly's authorization. The Court of Special Appeals, consequently, did not reach the question of whether the State Legislature had authorized the fee. The court did overturn that part of the injunction which ordered the Campbells to permit § 12-9 inspections, on the ground that there was no evidence that the City had ever requested or the Campbells refused such inspections.

This Court granted the Campbells' petition for a writ of certiorari, which presented only their contention that the license fee imposed upon residential rental dwellings by § 12-16 (f) of the Annapolis City Code violates Art. XI-E, § 5, of the Maryland Constitution. No cross-petition for certiorari was filed by the City of Annapolis.

## I.

Historically, for some purposes, cases have recognized a distinction between governmental charges that are essen-

tially revenue-raising and those that are primarily part of a regulatory scheme. *Anne Arundel County v. English,* 182 Md. 514, 520, 35 A.2d 135 (1943); *see American Nat'l v. M. & C.C.,* 245 Md. 23, 30, 224 A.2d 883 (1966). While statutory language may be indicative of the nature of a charge, e.g., "tax" generally refers to a revenue-raising measure, the purpose of the enactment governs rather than the legislative label. *See Theatrical Corp. v. Brennan,* 180 Md. 377, 381-382, 24 A.2d 911 (1942). Assuming the necessity in certain contexts for drawing the distinction, in our view there is no reason in this case for us to decide whether the fee imposed by § 12-16 (f) of the Annapolis City Code is primarily revenue-raising or is primarily for a regulatory purpose. In either event, it is within the ambit of the constitutional restriction.

Article XI-E, § 5, of the Maryland Constitution prohibits a municipality from levying "any type of tax, license fee, franchise tax or fee," unless the charge is expressly authorized by the General Assembly, or was in effect prior to January 1, 1954. By use of the words "tax" and "license fee" individually, and further use of "franchise tax *or* fee," the constitutional language shows an intention to encompass both revenue-raising and regulatory levies. The phrase "any type" underscores this intention. The construction of Art. XI-E, § 5, by the Court of Special Appeals is at odds with the plain language of the Constitution. The language employed is all-encompassing, negating the distinction drawn by the Court of Special Appeals.

The history of Art. XI-E, § 5, confirms that the restriction was intended to embrace all license fees regardless of purpose. In June 1952, the Commission on Administrative Organization of the State, known as the "Sobeloff Commission," [4] submitted its second interim report on local legislation in Maryland. At that time "[l]ocal legislation ma[de] heavy demands on the time and energy of members

---

4. The popular name of the Commission comes from its first chairman, Simon E. Sobeloff, who shortly thereafter became Chief Judge of this Court and later became Chief Judge of the United States Court of Appeals for the Fourth Circuit.

of the General Assembly," because localities had little power to legislate for themselves. *Local Legislation in Maryland,* Commission on Administrative Organization of the State 1 (2d Rep. 1952). The Sobeloff Commission recommended two constitutional amendments to help alleviate the diversion of state legislative energies into local legislation, as well as to help instill greater flexibility and responsibility in local governments. *Id.* at 2-3. One of the Commission's recommendations provided the basis for what is now Article XI-E of the Maryland Constitution. The Sobeloff Commission proposed that "the Constitution be amended to prohibit State enactment of local legislation relating to municipalities, except for maximum limits on local property taxes and debt." *Id.* at 3. Section 5 of Article XI-E, as suggested by the Commission, is as follows (*id.* at 52-53):

"Notwithstanding any other provision in this Article, the General Assembly may enact, amend, or repeal local laws placing a maximum limit on the rate at which property taxes may be imposed by any municipal corporation and regulating the maximum amount of debt which may be incurred by any municipal corporation. However, no such local law shall become effective in regard to a municipal corporation until and unless it shall have been approved at a regular or special municipal election by a majority of the voters of that municipal corporation voting on the question. All charter provisions enacted under the authority of Section 3 of this Article shall be subject to any local laws enacted by the General Assembly and approved by the municipal voters under the provisions of this section."

Based on this history, the City of Annapolis argues that the Sobeloff Commission's purpose, of limiting General Assembly involvement in municipal legislation to tax and debt matters, must be inferred when construing the language of Article XI-E, § 5. This position might have some merit if the Sobeloff Commission's draft of § 5 had been adopted as proposed. However, an examination of how the

Commission's draft was changed by the Legislature refutes the City's argument. While the Legislature adopted much of the Commission's suggested draft when proposing Article XI-E for voter ratification, two substantial alterations were made. See Chapter 53 of the Acts of 1954. One change was the addition of language to § 6 restricting the authority of municipalities over alcoholic beverages and "observance of the Sabbath day." The other change involved the language at issue in this case, which was added to § 5. That section, as amended by the General Assembly and adopted by the voters, is as follows (with additions and changes made by the Legislature in italics):

"Notwithstanding any other provision in this Article, the General Assembly may enact, amend, or repeal local laws placing a maximum limit on the rate *of* which property taxes may be imposed by any *such* municipal corporation and regulating the maximum amount of debt which may be incurred by any municipal corporation. However, no such local law shall become effective in regard to a municipal corporation until and unless it shall have been approved at a regular or special municipal election by a majority of the voters of that municipal corporation voting on the question. *No such municipal corporation shall levy any type of tax, license fee, franchise tax or fee which was not in effect in such municipal corporation on January 1, 1954, unless it shall receive the express authorization of the General Assembly for such purpose, by a general law which in its terms and its effect applies alike to all municipal corporations in one or more of the classes provided for in Section 2 of this Article.* All charter provisions enacted under the authority of Section 3 of this Article shall be subject to any local laws enacted by the General Assembly and approved by the municipal voters under the provisions of this section."

Thus, the only substantive changes from the Sobeloff Commission's draft of Article XI-E, that were adopted by the Legislature and ratified by the voters, impose *restrictions* on the power of municipalities beyond those suggested by the Commission. The purpose of the legislative changes was to further restrict, not extend, municipal authority. Although the § 5 restriction on municipal authority contained in the Commission's draft was limited to revenue-raising matters, the General Assembly's modification broadened that restriction to "any type of tax, license fee, franchise tax or fee which was not in effect . . . on January 1, 1954."

Neither the language of Article XI-E, § 5, nor its history indicates an intention to encompass only "revenue-raising" levies, and not those imposed for regulatory purposes. We hold that Article XI-E, § 5, of the Maryland Constitution prohibits municipalities from levying "any type of tax, license fee, franchise tax or fee," whether regulatory or revenue-raising, unless the type of charge was in effect prior to January 1, 1954, or has been expressly authorized by the General Assembly.

## II.

The City of Annapolis alternatively argues, and the circuit court held, that the City's residential rental unit license fee has received, in the language of Article XI-E, § 5, "the express authorization of the General Assembly," and that, therefore, the fee does not violate that constitutional provision. The City finds express authorization for the fee in three state legislative enactments: Code, Art. 23A, § 2; Art. 23B, § 22 (33); and Code (1957, 1979 Repl. Vol., 1980 Cum. Supp.), Art. 56, § 12.

Section 2 of Art. 23A provides that every municipality, except Baltimore City,

> "shall have *general power* to pass such ordinances not contrary to the public general or public local laws and the Constitution of Maryland as they may

deem necessary in order to assure the good government of the municipality, to protect and preserve the municipality's rights, property, and privileges, to preserve peace and good order, to secure persons and property from danger and destruction, and to protect the health, comfort and convenience of the citizens of the municipality . . . ." (Emphasis supplied.)

After setting forth this "general power," Art. 23A, § 2, states that municipalities "shall have the following express ordinance-making powers" and then lists thirty-three "express" powers of municipalities. None of the thirty-three enumerated "express" powers authorizes the license fee at issue here, and the City does not contend otherwise. Instead, the City appears to rely on the initial broad authority to protect the public health, safety, etc. However, this usual non-specific delegation, which the Legislature itself denominated "general," clearly does not meet the constitutional standard of "express authorization" to levy a license fee.

The City also claims that express approval of the § 12-16 (f) fee by the General Assembly may be found in Code, Art. 23B, § 22 (33). Article 23B contains a model charter for municipal corporations. Section 22 (33) of the model charter states that the city council shall have the power

"[s]ubject to any restrictions imposed by the public general laws of the State, to license and regulate all persons beginning or conducting transient or permanent business in the town for the sale of any goods, wares, merchandise, or services, to license and regulate any business, occupation, trade, calling, or place of amusement or business; *to establish and collect fees and charges for all licenses and permits issued under the authority of this charter."* (Emphasis supplied.)

Respondents argue that this language reflects a broad

authorization for municipal fees, including those of the type at issue here.

As made clear by the title and initial sections of the Act adopting Art. 23B, Chapter 258 of the Acts of 1955, § 1, pp. 375-376, the article is merely a model "for the use of any town desiring to adopt it." It is not a grant of power by the General Assembly, but the grant of power to the municipal government is by the people of a municipality which chooses to adopt the model. If all municipalities had all of the powers enumerated in Art. 23B simply by virtue of the model charter having been approved by the Legislature, there would be no need for municipalities to adopt a charter based on Art. 23B. They would already have all of the powers because of the presence of Art. 23B in the Annotated Code of Maryland.

The purpose of Art. 23B, § 22 (33), is undoubtedly to assure that a municipality, adopting this model charter provision, would have under *its* charter the authority to levy license fees *in the event* that the General Assembly expressly authorized such charges. Thus, § 22 (33) cannot be considered "express authorization" of the General Assembly as required by Article XI-E, § 5, of the Maryland Constitution.

Lastly, the City points to Code, Art. 56, § 12, as a grant of legislative authority for the license fee imposed by § 12-16 of the Annapolis City Code. Section 12 of Art. 56 provides in part (emphasis supplied):

"§ 12. When local licenses prohibited; exception as to Prince George's and Worcester counties and Baltimore City.

"Except as otherwise expressly provided in this article, no county, city or other political subdivision of this State shall require any person, firm or corporation to obtain a permit or license to transact in such county, city or other political subdivision, any business or occupation for which it or he is required to obtain a State license under the provisions of this article, nor shall any county, city or other political

> subdivision of this State levy any occupational tax or fee upon such person, firm or corporation for transacting any such business or engaging in any such occupation for which such State license is required. *Notwithstanding the provisions of this section, any county, city or other political subdivision of this State may require permits or licenses to be obtained where necessary for regulatory purposes in the interest of the public health, safety or morals. . . ."*

It is contended that the italicized language permits the City to levy § 12-16 (f) license fees.

Preliminarily, it should be noted that the italicized language relied upon is not an affirmative grant of power; instead, it is only an exception to a particular prohibition. Furthermore, the exception is of limited scope. Article 56, § 12, of the Code essentially contains two prohibitions: *first,* a prohibition on the licensing of businesses or occupations by a political subdivision when the State licenses the type of business or occupation; *second,* a prohibition on subdivisions' levying a fee or tax on a business or occupation licensed by the State. The italicized portion of the statute containing the exception relates only to the first prohibition. It expressly exempts, under certain circumstances, political subdivisions from the prohibition on licensing. It is not an exemption from the prohibition regarding *fees.*

Even if the relied upon language in Art. 56, § 12, is viewed as an affirmative grant of authority to the political subdivisions, independent of the limited prohibitions contained in that section, the statutory language itself would indicate that it is merely a power to license and not to collect fees. As petitioners here contest only the validity of the license fee, and not of the entire licensing scheme, Art. 56, § 12, does not constitute the express authorization necessary to validate the municipal levy.

Since the fee imposed by § 12-16 (f) of the Annapolis City Code has not been "express[ly] authoriz[ed]" by the General

Assembly, it is invalid under Article XI-E, § 5, of the Maryland Constitution.

> *Judgment of the Court of Special Appeals reversed in part, and case remanded to that court with instructions to reverse the judgment of the Circuit Court for Anne Arundel County and remand the case for entry of a judgment not inconsistent with this opinion.*
>
> *Respondent to pay costs.*