Dear George C. Edwards
You have requested our opinion on the authority of the City of Cumberland ("City") to impose a "street utility fee" — a revenue source intended to assist the municipality in the maintenance of its streets.
For the reasons explained below, it is our opinion that the street utility fee envisioned by the City is more akin to an excise tax than a regulatory fee or a user fee. Accordingly, the City lacks authority to impose such a charge unless the General Assembly enacts enabling legislation applicable to municipalities generally.
 I Street Utility Fee
A. Purpose of Fee
You provided a letter from the City Administrator, who explained that the contemplated street utility fee would allow the City to raise revenue from individuals and entities located within the City based on the traffic they are likely to generate on municipal streets. Those revenues would supplement or substitute for the property tax and other revenues that currently fund street maintenance. Unlike the property tax, the street utility fee would extend to tax-exempt entities that benefit from a system of well-maintained streets, but that have not traditionally contributed to the cost of street maintenance.
The City Administrator accurately framed the key issue: whether such a charge is a regulatory fee, which a municipality has authority to impose, or whether it is more appropriately considered a tax, which would require the enactment of enabling legislation by the Legislature and which may be subject to other constitutional constraints.
B. Minnesota Proposal
We understand that the street utility concept is based on a proposal developed by the League of Minnesota Cities ("Minnesota League"). The Minnesota League, in partnership with that state's City Engineers Association and Public Works Association, has proposed legislation that would enable Minnesota's municipalities to impose a street utility fee, which it describes as a dedicated funding source for street maintenance similar to utility charges for water or sewer services.
Under the Minnesota League's proposal, such a fee would be based on a "trip-generation rate" calculated for various land uses, according to the current edition of the Trip GenerationManual published by the Institute of Transportation Engineers.[1] A property owner could appeal the amount of the fee or the application of the trip generation rate to the governing body of the municipality and then to the state's tax court.
The ordinance imposing the charge would have to be adopted by a two-thirds vote of the municipal governing body in accordance with certain procedural requirements. As a prerequisite, the municipality would have to adopt a five-year master plan for the proposed reconstruction, upgrade, and maintenance of its streets. Revenues resulting from the fee would be used only in accordance with that plan. A municipality would not be precluded from also drawing on revenue from other sources for municipal street work.
In concept, the fee structure would be equitable, since the charge would be based on the projected proportional use of municipal streets by residents, businesses, and other entities within the municipal limits.[2]
 II Analysis
A. Municipal Authority to Impose Fees and Taxes
The Maryland Constitution prohibits the imposition of any form of tax or fee without the authorization of the General Assembly. Maryland Declaration of Rights, Article 14. The municipal home rule amendment of the State Constitution sets forth a similar limitation:
 . . . No . . . municipal corporation shall levy any type of tax, license fee, franchise tax or fee which was not in effect in such municipal corporation on January 1, 1954, unless it shall receive the express authorization of the General Assembly for such purpose, by a general law which in its terms and effect applies alike to all municipal corporations in one or more of the classes provided for in Section 2 of this Article. . . .
Maryland Constitution, Article XI-E, § 5.[3] This restriction applies not only to general revenue measures, but to regulatory fees as well. Campbell v. Mayor and Alderman ofAnnapolis, 289 Md. 300, 308, 424 A.2d 738 (1981).
Subsequent to the Campbell decision, the General Assembly granted municipalities authority to assess regulatory fees. Annotated Code of Maryland, Article 23A, § 2(b)(33)(ii).[4]See 89 Opinions of the Attorney General 212, 217 (2004). However, the General Assembly has not granted municipalities general taxing authority.
B. Nature of "Street Utility Fee"
Conceptually, a street utility fee might be best characterized as a "burden offset charge." See Spitzer, Taxes vs. Fees: ACurious Confusion, 38 Gonz. L. Rev. 335, 345-49 (2002-03). Nonetheless, it must be analyzed within the parameters of Maryland law. First, we consider whether a street utility fee is a user fee analogous to utility charges. We then address whether a street utility fee is properly characterized as a regulatory charge or a tax.
1. Service Charge
The courts have distinguished service charges, or user fees, from taxes and regulatory fees. See West Capital Assoc. Ltd.Partnership v. City of Annapolis, 110 Md. App. 443, 450-51,677 A.2d 655 (1996). Generally, such charges are based on consumption (e.g., water) or the provision of a service (e.g., sewer service) to the person charged. By contrast, a street utility fee would be mandatory and based on average trip generation data, without regard to actual use of the streets by any individual or entity. In addition, improved street maintenance would only indirectly benefit many of those assessed. Accordingly, we do not believe the contemplated street utility fee could fairly be characterized as a user or service charge.[5]
 2. Regulatory Fees and Tax Measures Distinguished
In Eastern Diversified Properties v. Montgomery County,319 Md. 45, 570 A. 2d 850 (1990), the Court of Appeals determined that a "development impact fee" imposed in two "planning policy areas" of the county to help pay for road construction was a tax rather than a regulatory fee. The Court stated that whether a particular fee constitutes a valid regulatory measure or constitutes a tax depends on the purpose of the enactment, rather than the label applied to it. 319 Md. at 53. The Court looked to the following standard for distinguishing between the two:
 [W]hether a particular Act is primarily a revenue measure or a regulatory measure is important, because different rules of construction apply. A regulatory measure may produce revenue, but in such a case the amount must be reasonable and have some definite relation to the purpose of the Act. A revenue measure, on the other hand, may also provide for regulation, but if the raising of revenue is the primary purpose, the amount of the tax is not reviewable by the courts. There is no set rule by which it can be determined in which category a particular Act primarily belongs. In general, it may be said that when it appears from the Act itself that revenue is its main objective, and the amount of the tax supports that theory, the enactment is a revenue measure. . . . [W]here the fee is imposed for the purpose of regulation, and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper, imposed by virtue of the police power . . .
Id. at 53, quoting Theatrical Corp. v. Brennan, 180 Md. 377,381-82, 24 A.2d 911 (1942) (internal citation omitted). InEastern Diversified, payment of the development impact fee was a prerequisite to obtaining a building permit. The sole condition imposed on a developer by the impact fee ordinance was payment of the fee. Although the stated purpose was to regulate development, revenues were dedicated to road construction in a large area. These reasons, and the absence of a nexus between the fee and stated regulatory purpose, led the Court to conclude that the impact fee was a revenue measure rather than a regulatory fee.Id., 53-55; see also 89 Opinions of the Attorney General
at 214-16.
Under the standard applied in Eastern Diversified, it is our view that the City's contemplated street utility fee is properly characterized as a tax rather than a regulatory fee, even assuming that the charge would be proportionally distributed among the landowners that benefit from a system of well maintained streets. The street utility fee would primarily be a revenue measure as it would be assessed without any regulatory component. Furthermore, the charges would be collected throughout the municipal limits, without any assurance of a direct benefit to those assessed. The only nexus would be the benefit to landowners relying on municipal streets due to improvements made in accordance with a plan. To be sure, the revenue would be dedicated to investment in the City's street infrastructure. However, the cost of street maintenance has traditionally been viewed a core function of government. United States v. City ofHuntington, West Virginia, 999 F.2d 71, 73 (4th Cir. 1993),cert. denied, 510 U.S. 1109 (1994). For these reasons, we believe the street utility fee would be properly characterized as a tax rather than a regulatory fee. Thus, Article 23A, § 2(b)(33)(ii) would not authorize the City to impose such a charge.
C. Nature of the Tax
Whether the Legislature may authorize a tax in the form of the contemplated street utility fee depends on the nature of that tax. Article 15 of the Maryland Declaration of Rights limits the assessment and levying of taxes on property as follows:
 That the levying of taxes by the poll is grievous and oppressive and ought to be prohibited; that paupers ought not to be assessed for the support of the government; that the General Assembly shall, by uniform rules, provide for the separate assessment, classification and sub-classification of land, improvements on land and personal property, as it may deem proper; and all taxes thereafter provided to be levied by the State for the support of the general State government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform within each class or sub-class of land, improvements on land and personal property which the respective taxing powers may have directed to be subjected to the tax levy; yet fines, duties or taxes may properly and justly be imposed, or laid with a political view for the good government and benefit of the community.
This limitation — referred to as the uniformity requirement — extends to property taxes imposed by municipal corporations as well as State and county property taxes. Griffin v. Anne ArundelCounty, 25 Md. App. 115, 126-27, 333 A.2d 612, cert. denied,275 Md. 749 (1975). However, this limitation applies only to property taxes; it does not extend to excise taxes.[6]Weaver v. Prince George's County, 281 Md. 349, 355,379 A.2d 399 (1977).
The modern view of an excise tax is that it extends to "any tax not levied directly on the ownership of property as such" and includes "[a] tax on the use and enjoyment of a privilege appurtenant to property . . ." Weaver, 281 Md. at 362. Seealso 16 McQuillin, The Law of Municipal Corporations § 44.190 (3rd ed. rev. 2003) (term "excise tax" has come to include practically any tax that is not an ad valorem tax).
The Court of Appeals has looked to three factors that distinguish an excise tax from a property tax. See WatersLanding Ltd. Partnership v. Montgomery County, 337 Md. 15,650 A.2d 712 (1994). First, while not determinative, the label given to the tax by the legislative body is entitled to "considerable weight." 337 Md. at 25. A second factor is the "actual operation and practical effect" of the tax. While a property tax is "a charge on the owner of the property by reason of his ownership alone without regard to any use that might be made of it . . . an excise tax is . . . imposed upon the performance of an act, the engaging in an occupation, or the enjoyment of a privilege."337 Md. at 25-26 (emphasis in original; internal quotations omitted). Finally, "the methods used to impose [the taxes] to fix their amount" should be taken into account. 337 Md. at 26. Thus, where a tax is based on the privilege exercised by the taxpayer, without regard to valuation of the property, it is an excise tax.[7]
As we understand the contemplated street utility fee, it would not be based on ownership of property or the actual value of the property.[8] Rather, its assessment would be based on the use of property or, more accurately, on the traffic likely to be generated as a result of that use. In our view, the Legislature could authorize municipalities to impose of a street utility fee such as that proposed by the Minnesota League as an excise tax measure.[9]
In summary, the Legislature could enact enabling legislation, applicable to municipal corporations throughout the State, authorizing municipalities to enact a street utility fee dedicated to street maintenance.[10]
 III Conclusion
In our opinion, a street utility fee would be regarded as a tax rather than a regulatory fee or user charge. The City lacks authority to impose the charge unless the Legislature enacts enabling legislation. The Legislature could authorize municipalities to impose such a charge as an excise tax without running afoul the constitutional uniformity requirement applicable to property taxes.
J. Joseph Curran, Jr.Attorney General
William R. VargaAssistant Attorney General
Robert N. McDonaldChief CounselOpinions and Advice
[1] The Trip Generation Manual (7th ed. 2003) includes trip generation data for 150 land use categories, based on over 4,250 individual trip generation studies.
To create a manageable fee structure, property classifications would likely be grouped with land uses with similar trip generation characteristics. See, e.g., Schoening, Developmentof a Street Utility for Funding Street Maintenance, Public Works 38 (August 2001) (addressing Lake Oswego, Oregon's experience).
[2] The legislation proposed by the Minnesota League did not pass during the 2005 legislative session.
[3] Article XI-E, § 2 of the Maryland Constitution requires that the General Assembly classify municipal corporations into not more than four classes based on population. The General Assembly has declared that all municipal corporations constitute a single class. Annotated Code of Maryland, Article 23A, § 10.
[4] The statute reads:
 In addition to, but not in substitution of, the powers which have been, or may hereafter be, granted to it, [a municipal] legislative body also shall have the following express ordinance-making powers:
. . .
 (33) Subject to the limitations imposed under Article 24 of the Code, the Tax-General Article, and the Tax-Property Article, to establish and collect reasonable fees and charges:
. . .
 (ii) Associated with the exercise of any governmental or proprietary function authorized by law to be exercised by a municipal corporation.
[5] The Supreme Court of Florida reached a similar conclusion when it invalidated a "transportation utility charge" imposed by a municipal government as an unauthorized tax. Florida v. Cityof Port Orange, 650 So. 2d 1 (Fla. 1994). The Court distinguished between a user fee and a tax as follows: "User fees are charges based upon the proprietary right of the governing body performing the use of the instrumentality involved. . . . [T]hey are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner not shared by other members of society . . . and they are paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge." Id. at 3 (internal citations omitted). But see Bloomv. City of Fort Collins, 784 P.2d 304 (Colo. 1989) (en banc) (mandatory transportation utility fee was a valid "special fee" under Colorado law).
[6] The uniformity requirement under Article 15 of the Declaration of Rights applies to general property taxes, but not to special taxes such as special assessments. See
63 Opinions of the Attorney General 16 (1978). The final clause of Article 15, "taxes . . . laid with a political view," authorizes the imposition of taxes other than property taxes. See Friedman,The Maryland State Constitution: A Reference Guide 24 (2006).
[7] While an excise tax would be based on use of the property, this is not to say that the Legislature could not provide a mechanism for the enforcement of the tax through imposition of a lien on the property itself and other property of the responsible taxpayer. See Waters Landing, 337 Md. at 27.
[8] Similarly, a street utility fee would not be a special assessment since a special assessment may be made only if there is a special benefit that accrues to the properties assessed, a benefit reflected in the value of those properties, in addition to any public benefit. See 89 Opinions of the AttorneyGeneral 107, 110-11 (2004).
[9] We found two cases from other states that reached different conclusions about whether similar charges would be considered property taxes under the laws of those states. In Bloom v. Cityof Fort Collins, 784 P.2d 304 (Colo. 1989) (en banc), a divided Colorado Supreme Court held that a municipal "transportation utility fee" imposed on owners or occupants of developed lots to support street maintenance was not property tax subject to constitutional uniformity requirement of the Colorado constitution, but rather a "special fee" related to the cost of maintaining city streets.
By contrast, in Covell v. City of Seattle, 905 P.2d 324
(1995) (en banc) a divided Supreme Court of Washington held that a municipal street utility charge was a property tax that violated the uniformity requirement of that state's constitution. Citing one of its prior cases "defining a property tax as a tax on things tangible and intangible and an excise tax as the right to use or transfer things," the majority opinion held that the charge was not an excise tax because the charge in question was ultimately based on ownership of property as opposed to the use of a city service. The Seattle fee is distinguishable to some extent from the Minnesota League proposal in that the latter fee appears to be more closely calibrated to projected use of the streets generated by the assessed property owner.
[10] The application of the street utility charge to properties exempt from the property tax is a policy question for the Legislature. Given that the charge is a tax rather than a regulatory fee, the charge may not be imposed on property of the federal government. See, e.g., United States v. City ofHuntington, West Virginia, 999 F.2d 71 (4th Cir. 1993),cert. denied, 510 U.S. 1109 (1994). *Page 24