570 A.2d 850

**EASTERN DIVERSIFIED PROPERTIES, INC.**

v.

**MONTGOMERY COUNTY, Maryland**

**No. 97, Sept. Term, 1989.**

Court of Appeals of Maryland.

March 7, 1990.

Stephen C. Hosea (Robert J. Kim, McNamee, Hosea, Jernigan & Scott, P.A., all on brief), Greenbelt, for appellant.

A. Katherine Hart, Sr. Asst. County Atty. (Clyde H. Sorrell, County Atty., both on brief), Rockville, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY and ADKINS, JJ., THEODORE G. BLOOM, Judge of the Court of Special Appeals (Specially Assigned), and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

MURPHY, Chief Judge.

The question presented is whether a "development impact fee," imposed by ch. 49A of the Montgomery County Code (1984) for road construction, is a valid regulatory fee under the County's home rule power or is a tax which the County is without authority to impose.

## I.

Eastern Diversified Properties, Inc. (Diversified) owns a parcel of land in Montgomery County upon which it proposes to construct an automobile sales and service facility containing 53,930 square feet of retail space and 9,444 square feet of office space. As required by law, the Maryland–National Capital Park and Planning Commission ap-

proved Diversified's proposed subdivision plat. Thereafter, Diversified filed an application for a building permit with the Montgomery County Department of Environmental Protection, which was approved upon condition that Diversified pay a development impact fee of $118,006. Diversified appealed the imposition of the impact fee to the County Board of Appeals (the Board), as authorized by § 49A–11 of the County Code.

After a hearing, at which it was determined that the facts were not in dispute, the hearing examiner reviewed the provisions of ch. 49A. He said that the purpose of the impact fee was "to regulate growth by obtaining partial funding of construction costs for roads which the County, based upon the cumulative impact of new development, has determined will be necessary." He determined that the impact fees are imposed at the building permit stage without exception as to the type of development covered by ch. 49A and apply to all new construction within two designated areas of the county, namely Germantown and eastern Montgomery County (where Diversified's property is located). He concluded that the formula for determining the fee under ch. 49A was designed "to assess a fair pro rata share for development" and restricted the fees to road construction uses which are "reasonably related to the development from which they are derived."

The hearing examiner determined that the impact fee was not a tax; that it was not collected for general revenue purposes, but was restricted to specific road improvements in specified areas of the County. He noted that the fees are not compulsory, like a tax, but are assessed only when a building permit is sought and then only for the sole purpose of making local road improvements "which directly benefit the property from which the fees are derived." The hearing examiner held that the impact fees were part of the development regulatory process and were imposed pursuant to the County's home rule powers. In determining that the impact fees did not constitute a tax, he reasoned that ch. 49A establishes a scheme "regulatory in nature and de-

signed to achieve a definite and just plan that will partially assist in the construction of roads, the need for which is directly attributable to the new development that is the source of the impact fee." The hearing examiner thus recommended that Diversified be required to pay the development impact fee.

The Board adopted the hearing examiner's recommendation by resolution dated May 12, 1988. Thereafter, Diversified appealed to the Circuit Court for Montgomery County which affirmed the Board's decision. After Diversified appealed to the Court of Special Appeals, we granted certiorari prior to argument in that court to consider the issue of significant public importance raised in the case.

## II.

As a result of the rate of growth in Montgomery County, the County Council, in enacting ch. 49A (entitled "Development Impact Fees for Major Highways") recognized a need for road construction in "planning policy areas." § 49A–2. To finance this construction, it imposed impact fees on new development within the policy planning areas. § 49A–4.[1]

Impact fees are to be collected from building permit applicants prior to the issuance of a building permit in the designated areas. Fees are calculated based upon the type of structure to be built and, in certain instances, upon the total square footage of the structure. §§ 49A–6 and A–12. The share of the costs of the highway construction to be paid by new development in the two established impact fee areas is 50% for Germantown and 44.75% for eastern Montgomery County. The projected total funds to be provided by impact fees for both areas is $108,723,000.[2] § 49A–13.

---

1. For a general review of the background, development, and law regarding development impact fees in Maryland see P. Tiburzi, *Impact Fees in Maryland,* 17 U.Balt.L.Rev. 502 (1988).

2. The amount of funds to be generated from the individual impact fee areas is $65,947,000 for the Germantown area and $42,776,000 for the eastern Montgomery County area.

The balance of funds necessary to pay for the highway construction is to be provided from public funds. § 49A–2(f).

Every two years the County Executive is required to prepare a report on development impact fees for the County Council, and to make recommendations regarding the program. § 49A–7. Impact fees are restricted to funding road construction in the area from which they are collected, either the Germantown or eastern Montgomery County area. § 49A–8.

Chapter 49A–3 recites that the "development impact fee for impact highways" is imposed pursuant to authority granted by § 101 of the county charter. This section of the county charter invests the County Council with all the legislative powers conferred upon the County by the State Constitution and by the General Assembly. In enacting the development impact fee, the County stated that it was "exercising its home rule powers, including its police power to ensure and coordinate the provisions of adequate transportation facilities with new development so that the public health, safety, and welfare are enhanced, traffic congestion is lessened, accessibility is improved, and economic development is promoted." § 49A–3(b).

## III.

As subdivisions of the State, counties may only act when specific grants of power are conferred upon them. *Howard County v. Matthews*, 146 Md. 553, 561, 127 A. 118 (1924). They do not have the power to tax on their own authority, but may do so only if the power has been granted by the State. *Schneider v. Lansdale*, 191 Md. 317, 61 A.2d 671 (1948); 4 Antieau, *Local Government Law*, § 41.00 (1989); 4 Sands & Libonati, *Local Government Law*, § 23.02 (1989). As a charter county exercising home rule powers, Montgomery County is governed by the Express Powers Act, Maryland Code (1987 Repl.Vol.), Article 25A, § 5. This section was enacted pursuant to § 2 of Article

XI–A of the Maryland Constitution and enumerates the powers granted to charter counties.[3] The exercise of legislative home rule powers by a charter county is thus "subject at all times to provisions of the Constitution and general law, and is limited to those matters allocated by the express powers which the Legislature has delegated under Article 25A of the Annotated Code." *Ritchmount Partnership v. Board,* 283 Md. 48, 57, 388 A.2d 523 (1978). *See also Mont. Citizens League v. Greenhalgh,* 253 Md. 151, 252 A.2d 242 (1969).

■ Section 5(O) of Article 25A entitled "Assessments, Levy and Collection of Taxes" expressly authorizes charter counties to impose a property tax; it does not, however, grant general taxing powers to charter counties. *Mont. Co. Bd. of Realtors v. Mont. Co.,* 287 Md. 101, 106–07, 411 A.2d 97 (1980); *Mont. Co. v. Md. Soft Drink Ass'n,* 281 Md. 116, 129–30, 377 A.2d 486 (1977); *Reinhardt v. Anne Arundel Co.,* 31 Md.App. 355, 373, 356 A.2d 917, *cert. denied,* 278 Md. 731 (1976); *Griffin v. Anne Arundel County,* 25 Md.App. 115, 126, 333 A.2d 612, *cert. denied,* 275 Md. 749 (1975).

■ Section 5(S) of Art. 25A grants broad powers to charter counties "to pass all ordinances ... not inconsistent with the provisions of this article or the laws of the State, as may be proper in executing and enforcing any of the powers enumerated in this section or elsewhere in this article, as well as such ordinances as may be deemed expedient in maintaining the peace, good government, health and welfare of the county." We have characterized § 5(S) "as a broad grant of power to legislate on matters not specifically enumerated in Art. 25A," in pursuance of which necessary and beneficial ordinances may be enacted consonant with the general powers of the charter county;

---

**3.** Section 2 of Article XI–A provides that "[t]he General Assembly shall by public general law provide a grant of express powers for such County or Counties as may thereafter form a charter" form of government.

moreover, we have recognized that § 5(S) must be liberally construed to afford wide discretion to charter counties in the good faith exercise of their police powers in the public interest. *Greenhalgh, supra,* 253 Md. at 161, 252 A.2d 242. *See also Ritchmount Partnership, supra,* 283 Md. at 57, 388 A.2d 523 and *County Council v. Investors Funding,* 270 Md. 403, 411, 312 A.2d 225 (1973). And we have said that the police power delegated to charter counties by § 5(S) "includes the power to regulate private business to the extent necessary to promote the public health, safety, morals, and welfare." *Prince Geo's Co. v. Chillum–Adelphi,* 275 Md. 374, 382, 340 A.2d 265 (1975).

### IV.

Diversified argues that the impact fee is in actuality an excise tax which Montgomery County is without authority to impose. It maintains that the dominant purpose of the impact fee is to raise revenue to construct highways for use of the public at large. It suggests that no specific correlation exists between the construction of the off-site highway and the property being developed. In this connection, Diversified claims that the impact fee is not sufficiently earmarked under the provisions of ch. 49A to establish a nexus of the type legally required to substantiate the charge as a regulatory fee. It says that the eastern Montgomery County impact area is so large that there is no assurance that the revenue generated by the fee will actually be used for the construction of highways claimed to be impacted by the development on Diversified's property. Diversified further contends that approval of its subdivision plan by the Maryland–National Capital Park and Planning Commission evidences the fact that existing highways are presently adequate to support its proposed development.

The impact fee under ch. 49A is not, Diversified argues, a regulatory fee imposed under the County's home rule power to defray costs associated with the building permit application procedure, or for public services unique to Diversified's property. It contends that nothing in the record indicates that the County examined Diversified's property and its

environs to determine, prior to imposing the impact fee, that road construction would be required to accommodate increased traffic as a result of Diversified's proposed use of its property.

The County argues that its general grant of powers under § 5(S) of Art. 25A is sufficient authority, in the absence of conflicting State law, to authorize it to impose the development impact fee. It points to § 49A–2(k) of the County Code, which outlines the County's intent in imposing the impact fee, namely:

> "to further the public health, safety, and welfare by ensuring that an adequate transportation system is available in support of new development in the impact fee areas. It is not the intent of this chapter to collect a development impact fee from new development in the impact fee areas in excess of that development's pro rata share of the costs associated with the impact highway improvements, as measured by the development's contribution to traffic impact in such area."

The County maintains that the impact fee is in furtherance of its authority over development within the County and is therefore a valid governmental charge exercised under its home rule power for the following reasons: funds collected from the fees are placed in a restricted account and may only be used for specific road improvements in certain designated areas within the County; the impact fees are only imposed when a building permit is requested, as opposed to taxes which are compulsory; that the local road improvements, which are funded by the impact fees, will directly benefit the properties that pay the fees; and that the entire financial burden is not on the developers but is "keyed to a proportionate share of the additional traffic placed on the road by such development based on a rational and reasonable formula set forth in the County Code."

## V.

We have recognized a distinction between the imposition of fees as a necessary part of a regulatory measure and the

imposition of a tax for revenue purposes. *Campbell v. City of Annapolis,* 289 Md. 300, 304–05, 424 A.2d 738 (1981); *Anne Arundel County v. English,* 182 Md. 514, 520, 35 A.2d 135 (1943); *Theatrical Corporation v. Brennan,* 180 Md. 377, 380–82, 24 A.2d 911 (1942); *see also American Nat'l v. M. & C.C.,* 245 Md. 23, 30, 224 A.2d 883 (1966). In evaluating whether a development impact fee is a regulatory charge or a tax, "the purpose of the enactment governs rather than the legislative label." *Campbell, supra,* 289 Md. at 305, 424 A.2d 738. In *Theatrical Corp. v. Brennan, supra,* 180 Md. at 381–82, 24 A.2d 911, we set forth the criteria for determining whether a governmental charge is a fee (regulatory measure) or a tax (revenue measure) as follows:

> "[W]hether a particular Act is primarily a revenue measure or a regulatory measure is important, because different rules of construction apply. A regulatory measure may produce revenue, but in such a case the amount must be reasonable and have some definite relation to the purpose of the Act. A revenue measure, on the other hand, may also provide for regulation, but if the raising of revenue is the primary purpose, the amount of the tax is not reviewable by the courts. There is no set rule by which it can be determined in which category a particular Act primarily belongs. In general, it may be said that when it appears from the Act itself that revenue is its main objective, and the amount of the tax supports that theory, the enactment is a revenue measure. 'In general, * * * where the fee is imposed for the purpose of regulation, and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper, imposed by virtue of the police power; but where it is exacted solely for revenue purposes and its payment give[s] the right to carry on the business without any further conditions, it is a tax' 33 Am.Jur., Licenses, Paragraph 19, page 340."

*Accord, Campbell, supra,* 289 Md. at 305, 424 A.2d 738; *Md. Soft Drink Ass'n, supra,* 281 Md. at 133–34, 377 A.2d

486; *American Nat'l v. M. & C.C., supra,* 245 Md. at 33–34, 224 A.2d 883 (quoting *Theatrical Corp. v. Brennan, supra,* 180 Md. at 381–82, 24 A.2d 911); *see also United States v. State of Md.,* 471 F.Supp. 1030, 1036 (D.Md.1979), where the court said:

> "The Supreme Court has defined a 'tax' as an 'enforced contribution to provide for the support of [the] government.' *United States v. LaFranca,* 282 U.S. 568, 572, 51 S.Ct. 278, 280, 75 L.Ed. 551 (1931). Courts have generally defined taxes as 'taking money from the taxpayer for public purposes.' *Puglisi v. United States* [215 Ct.Cl. 86], 564 F.2d 403, 408 (Ct.Cl.1977)."

In concluding that the Maryland environmental surcharge there at issue was a tax and not a utility rate, the court pointed out that the charge was an involuntary exaction of money by the State, there was no choice as to the payment or non-payment of the charge, and the funds raised by the charge were used to finance projects to benefit the general public. *Id. See also Workmen's Comp. Comm. v. P & G Ins. Guar. Corp.,* 319 Md. 1, 570 A.2d 323 (1990).

We think that the characteristics of the development impact fee scheme as set forth in ch. 49A are indicative of a tax rather than a regulatory fee. Indeed, the revenue raising objective of the development impact fee scheme is evident in § 49A–2(f) which states:

> "Imposing a development impact fee that requires new development in certain impact fee areas to pay their pro rata share of the costs of impact highway improvements necessitated by such new development in conjunction with other public funds is a reasonable method of raising the funds to build such improvements in a timely manner."

Section 49A–2(g) states that funds collected from the imposition of development impact fees "will fund, in part, the improvements necessary to increase the transportation system capacity in the impact fee areas thereby allowing development to proceed." Nothing in ch. 49A suggests that impact fees are charged solely on the basis of service

provided to the property owner, or to defray expenses of the development regulatory process. As we see it, the primary and predominant purpose of the enactment of the development impact fee is to raise revenue, regardless of what incidental regulatory effect the imposition of the fees may have on development within the county. The amount of the individual development impact fee in this case ($118.006), the projected total revenue of $108,723,000 from impact fees and the anticipated expenditure of $227,483,000 on highway construction indicate to us that the main purpose of ch. 49A is to raise revenue.

Additionally, there are no further conditions that must be met by the developer when the impact fee is assessed. All that is required under ch. 49A-4 for the developer to qualify for a building permit is the payment of the impact fee. The County's principal purpose under ch. 49A is not the regulation of development, therefore, but rather to generate revenue to build roads. The relationship between the fee and the benefit to the property owner necessary for the measure to be regulatory in effect is not just that the property owner receive some benefit from the improvement, as the County asserts, but as we said in *Theatrical Corp. v. Brennan, supra,* 180 Md. at 381, 24 A.2d 911, "[t]he amount must be reasonable and have some definite relation to the purpose of the Act."

In this case, the development impact fee imposed on new development is exacted solely for revenue purposes, is an involuntary payment of money, and the funds raised by the fee are used to finance road construction which benefit the general public. Chapter 49A thus imposes a tax which Montgomery County is without authority to enact, and the development impact fee is therefore invalid.[4]

JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO ENTER A

---

4. We do not decide whether the tax in this case is an excise, a property, or another type of tax.

JUDGMENT IN ACCORDANCE WITH THIS OPINION; COSTS TO BE PAID BY MONTGOMERY COUNTY, MARYLAND.