Dear Anne-Herbert Rollins, Esquire
On behalf of the City of Taneytown, you have requested our opinion on the authority of the municipality to impose development impact fees for police and fire protection services. Specifically, you raised the following questions:
1. May a municipal corporation impose an impact fee on residents of new developments located within the municipal corporation to fund additional police and fire services?
2. If so, may the municipal corporation impose such a fee for additional fire services where the fire department is not a municipal department but, rather, a local volunteer fire department to which the municipal corporation contributes funding?
You provided us with your legal analysis, which concluded that the municipality lacks authority to impose impact fees for these purposes without enabling legislation from the General Assembly.
For the reasons explained below, we generally agree with your conclusion. Absent authorization by the General Assembly, a municipal corporation may not impose a development impact fee for any purpose, if the law creating the fee is primarily a revenue measure and the impact fee is therefore a tax. Thus, enabling legislation by the General Assembly would be necessary to impose such a fee. Under existing statutory authority, a municipality may impose an impact fee as part of a regulatory measure. However, in that case, there must be an adequate nexus between the charge imposed and the cost of the services to the property assessed, and the revenue must be appropriately earmarked so as to substantially benefit that property. This is unlikely to be the case for fees related to the provision of police and fire protection services, particularly if the City's contributions to a volunteer fire department are voluntary.
I
Development Impact Fees
A. Impact Fees
The phrase "impact fee" is used to describe a fee that is tied to the approvals required for a new development and that is in addition to ordinary fees for required permits. 71 Opinions of the Attorney General 214, 215 (1986). Impact fees are imposed to offset the cost of infrastructure or public facilities necessary to support new development. See Tiburzi, Impact Fees in Maryland, 17 U. Balt. L. Rev. 502 (1988). In principle, an impact fee reflects the proportionate share of the capital cost of providing a certain service to individual dwelling units or other consuming units that begin using that service for the first time. Id. at 503. From a municipal finance perspective, there are two advantages to impact fees: First, the cost of improvements is shifted from existing taxpayers or customers to those responsible for new development; second, revenue is collected before improvements are constructed, rather than afterward. Id. at 502-3. Payment of an impact fee may be a condition precedent to certain action by municipal officials — i.e., issuance of a building permit or approval of a subdivision plat.
B. Authority to Impose Impact Fee
A local government may not impose a tax or fee, including an impact fee, without authorization from the General Assembly. Article 14 of the Maryland Declaration of Rights provides "[t]hat no aid, charge, tax, burthen or fees ought to be rated or levied, under any pretense, without the consent of the Legislature." The 1954 constitutional amendment that granted home rule to municipal corporations sets forth a similar limitation: "No . . . municipal corporation shall levy any type of tax, license fee, franchise tax or fee which was not in effect in such municipal corporation on January 1, 1954, unless it shall receive the express authorization of the General Assembly for such purpose, by a general law which in its terms and its effect applies alike to all municipal corporations in one or more of the classes provided for in Section 2 of this Article." Maryland Constitution, Article XI-E, § 5.[1]
C. Nature of Impact Fee as Tax or Regulatory Measure
The constitutional restrictions apply regardless of whether a fee is a regulatory measure or a revenue-raising tax. Campbell v. City of Annapolis, 289 Md. 300, 305, 424 A.2d 738 (1981). However, in a particular case, the validity of an impact fee may depend on whether it is more aptly characterized as a regulatory measure or a tax, since municipal corporations have statutory authority to impose regulatory fees, but lack general taxing authority.
A regulatory fee must be "reasonable and have some definite relation to the purpose of [the regulatory] scheme." Mayor of Ocean City v. Purnell-Jarvis, Ltd., 86 Md. App. 390, 404, 586 A.2d 816
(1991). In contrast, a "revenue-raising" measure or tax (other than a special assessment) need not have any connection between the subject of the tax and use of the resulting revenue. Allied Am. Mut. Fire Ins. Co. v. Comm'r of Motor Vehicles, 219 Md. 607, 616,150 A.2d 421 (1959). Unlike a regulatory fee, the amount of a revenue-raising measure is not subject to judicial review. Mayor of Ocean City, 86 Md. App. at 405.
In Eastern Diversified Properties, Inc. v. Montgomery County,319 Md. 45, 570 A.2d 850 (1990), the Court of Appeals held that an impact fee imposed to pay for road construction constituted a tax, rather than a regulatory measure. In that case, the impact fee was imposed prior to the issuance of a building permits in two designated "planning policy areas" of Montgomery County to pay for road construction. The fee was intended to reflect a pro rata share of the costs resulting from new development. In enacting the impact fee, the County relied, not on its taxing authority, but on "its home rule powers, including its police power to ensure and coordinate the provisions of adequate transportation facilities with new development .. . ." 319 Md. at 49. Revenue collected from the impact fee was dedicated to road improvements in the planning area in which the fee was assessed. Id. Eastern Diversified challenged the fee, arguing that it was an unauthorized excise tax. Id. at 51.
The Court noted that the classification of an impact fee as a regulatory measure or a tax depends on the purpose of the enactment, rather than the label attached to it. 319 Md. at 53. The Court adopted the following basis for distinguishing the two:
A regulatory measure may produce revenue, but in such a case the amount must be reasonable and have some definite relation to the purpose of the Act. A revenue measure, on the other hand, may also provide for regulation, but if the raising of revenue is the primary purpose, the amount of the tax is not reviewable by the courts. There is no set rule by which it can be determined in which category a particular Act primarily belongs. In general, it may be said that when it appears from the Act itself that revenue is its main objective, the enactment is a revenue measure. . . . [W]here the fee is imposed for the purpose of regulation, and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper, imposed by virtue of the police power .. . .
Id. at 53, citing Theatrical Corp. v. Brennan, 180 Md. 377, 381-82,24 A.2d 911 (1942) (internal citation omitted). The Court concluded that the impact fee imposed by Montgomery County was predominantly a revenue-raising measure. Nothing in the local legislation establishing the impact fee suggested that the fee was charged solely based on service provided to new development or that it was designed to defray expenses of the development regulatory process. Furthermore, the sole condition imposed in connection with the fee was its payment. Although the County argued that the purpose of the fee was to regulate development, the revenues were devoted to road construction in a large area. To qualify as a regulatory measure, it was not sufficient that "the property owner receive some benefit from the improvement." Rather, the amount of the fee would need to "be reasonable and have some definite relation to the purpose of the Act." Id. at 53-55. Thus, the impact fee in that case constituted a tax that the County lacked authority to impose. Id. at 55.[2]
The Court's decision does not suggest that an impact fee could never be imposed as a valid regulatory measure. In reaching its decision, the Court emphasized that the primary purpose of the Montgomery County impact fee was to raise revenue and that the fees were not sufficiently linked to services provided or to the expense of the regulatory process. 319 Md. at 54-55.
II
Municipal Authority to Impose Impact Fees
A. Legislation Authorizing Impact Fees
Unless authorized by public local law before 1954 or by public general law, a municipal corporation lacks authority to impose any form of excise tax, including an impact fee that would be construed as a tax under Eastern Diversified Properties. When the General Assembly has granted explicit authority to local governments to impose impact fees, that authority generally has been limited to financing capital improvements. See, e.g., Annotated Code of Maryland, Article 25, § 9 (authority of Carroll County to impose impact fees); Article 25B, § 13D (authority of counties that have adopted code home rule to impose impact fees); but see Annotated Code of Maryland, Article 23A, § 44(b) (authority for municipal corporation to create special taxing district for bus or ride sharing system; use of impact fees as well as ad valorem taxes to support both capital and operating costs).
B. Article 23A, § 2(b)(33)
The General Assembly has granted municipalities the general power to assess regulatory fees:
In addition to, but not in substitution of, the powers which have been, or may hereafter be, granted to it, [a municipal] legislative body also shall have the following express ordinance-making powers:
. . .
(33) Subject to the limitations imposed under Article 24 of the Code, the Tax-General Article, and the Tax-Property Article, to establish and collect reasonable fees and charges:
. . .
(ii) Associated with the exercise of any governmental or proprietary function authorized by law to be exercised by a municipal corporation.
Annotated Code of Maryland, Article 23A, § 2(b)(33)(ii). The authorization to impose "reasonable" fees and charges indicates that, in enacting § 2(b)(33)(ii), the Legislature was conferring authority to impose regulatory charges rather than taxes.[3]
C. Rational Nexus Test
To justify imposition of impact fees on new development as a regulatory measure under Article 23A, § 2(b)(33), there must be a sufficient nexus between the fee assessed and the proportional cost of providing the benefits supported by that fee to affected property owners. The Court of Appeals alluded to the need for such a nexus in Eastern Diversified, but did not articulate a specific standard for determining whether a nexus exists. While courts in other states have relied on a number of alternative standards in considering the validity of impact fees, the "rational nexus" test predominates. See, e.g., Blaesser Kentopp, Impact Fees: The "Second Generation," 38 Wash. U. J. Urb. Contemp. L. 55, 100 (1990).
Under the rational nexus test, an impact fee is permissible as a regulatory measure, so long as (1) the fee relates to needs attributable to new development, and (2) the revenue collected is earmarked for the substantial benefit of the development charged. 8 McQuillin, The Law of Municipal Corporations § 25.118.60 (3rd ed. rev. 2000). Thus, there are two steps in the analysis: first, the municipality must be able to demonstrate a reasonable connection, or rational nexus, between the population growth resulting from new development and the need for additional facilities; and second, the municipality must be able to show a reasonable connection, or rational nexus, between use of the revenue generated by the fee and benefits accruing the project or property assessed. Id.
III
Police and Fire Protection Services
The impact fee contemplated in your request is unusual in that it would relate to the municipality's cost of providing additional police and fire protection services, rather than to the cost of capital improvements. As noted above, impact fees are generally used to help defray the cost of infrastructure required to accommodate new development. However, it may be possible to recover the operating cost of municipal services resulting from new development through an impact fee.
A. Impact Fees as an Excise Tax — Enabling Legislation
Before enacting a local ordinance to impose an impact fee for services, the municipality could seek enabling legislation through the General Assembly allowing it to impose the fee as an excise tax. Such legislation would need to be enacted as a public general law, applicable to each municipality governed under the municipal home rule amendment. Maryland Constitution, Article XI-E, § 5; Article 23A, § 10. The enabling legislation should be drafted to describe the permissible uses for which impact fees might be imposed. The advantage of this approach is that there would be no need to show a nexus between the assessment and the use of the revenue.
B. Impact Fees as a Regulatory Measure — Additional Police
In Eastern Diversified Properties, the Court of Appeals made clear that a regulatory fee must have some connection to the underlying purpose of the legislation, beyond revenue generation.319 Md. at 54-55. If the sole condition required by the ordinance would be payment of an impact fee to obtain a building or development permit, the fee would constitute a tax. On the other hand, if the ordinance prescribed minimum police service levels for the municipality and adopted a formula or model under which the fee would be calculated, in theory it could reflect the need for additional police services based on the impact of new development. See, e.g., Kelly, Development Impact Fees: Modeling Future Growth and Economic Development in a South Carolina Community, 20 Int'l. J. Pub. Admin. 1599, 1606 (1997) (treating cost of police officer as capital asset for purposes of calculating impact fee).
The second part of the rational nexus test requires that there be a reasonable connection between the use of the revenues derived from the impact fee and benefits accruing to the project or property assessed. A regulatory fee must be based either on the expense of the regulatory process or, in this case, on the cost of services provided. However, it is not sufficient that the property owner receive some benefit from the services. Rather, the fee must be reasonable and have some definite relation to the purpose of the ordinance. Eastern Diversified, 319 Md. at 55. Stated otherwise, revenues must be earmarked to provide police protection in the specific area assessed, and the fees must be proportional to the cost of providing the services. Unless the revenues were devoted to the provision of police services in the specific area of assessed property, an impact fee would likely be invalidated as an unauthorized excise tax.
C. Impact Fees as a Regulatory Measure — Support of Volunteer Fire Department
You asked whether a municipality may impose impact fees to support the services of a volunteer fire department. It is not clear whether the City is legally obligated to make payments to the volunteer fire company based on properties served, or whether its contribution is voluntary. If the payments are voluntary, it does not appear that an impact fee could be justified based on the municipality's cost of serving new development. If they are not, a regulatory fee would need to be structured to satisfy the two-part reasonable nexus test.
IV
Conclusion
If the City of Taneytown desires to impose development impact fees on new development to help pay for police and fire protection services, it would be prudent to seek enabling legislation from the General Assembly, applicable to all municipalities, authorizing imposition of impact fees as an excise tax and addressing the types of activities that can be financed in this manner. In theory, the City might be able to structure an impact fee as part of a regulatory measure, if the fee were based on the costs attributable to providing services to the new development and the revenues were earmarked to provide those services to the development assessed. However, this is unlikely to be the case with most fees related to such services, particularly if the City's payments to a volunteer fire department are voluntary.
J. Joseph Curran, Jr. Attorney General
William R. Varga Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] Article XI-E, § 2 of the Maryland Constitution requires that the General Assembly classify municipal corporations into not more than four classes based on population. The General Assembly has complied with this mandate by declaring that all municipal corporations constitute a single class. Annotated Code of Maryland, Article 23A, § 10.
[2] The Court did not need to decide whether the impact fee was properly characterized as a property tax, excise tax, or other type of tax. Id. at 55, n. 4. However, in a subsequent decision, the Court made clear that the impact fee at issue was an excise tax. Waters Landing Ltd. Partnership v. Montgomery County, 337 Md. 15, 25, 650 A.2d 712
(1994).
[3] Article 23A, § 2(b)(33) was enacted as an emergency measure after the Court of Appeals struck down a fee imposed in connection with a municipal residential licensing scheme. See Chapters 565 and 684, Laws of Maryland 1981, superseding Campbell v. City of Annapolis,289 Md. 300, 424 A.2d 738 (1981). That legislation was intended to "restore to municipal corporations the broad authority `heretofore thought to exist' to levy fees and charges in connection with the exercise of their lawful powers." 67 Opinions of the Attorney General 307, 310 (1982).
In a 1986 opinion, Attorney General Sachs relied on § 2(b)(33) to conclude that the Town of Ocean City could impose an impact fee on new development to fund its local share of the cost of beach restoration efforts. 71 Opinions of the Attorney General 214 (1986). That opinion preceded the Eastern Diversified decision and did not focus on the distinction between a tax and a regulatory fee. The conclusion that the proposed Ocean City fee would be permissible was supported in part by a provision in several bills then pending before the General Assembly (now codified at Annotated Code of Maryland, Natural Resources Article, § 8-1103(i)(2)(ii)2, that authorized replenishment of the ocean beach and required a local contribution, specifically referencing "fees and charges authorized under Article 23A, § 2(b)(33)." Id. *Page 222