## COUNTIES

### CODE HOME RULE COUNTIES – TAXES AND FEES – WHETHER CHARLES COUNTY MAY IMPOSE A HOST FEE ON WASTE TRANSFER STATIONS

December 22, 2020

*Reuben B. Collins, II, Esq., President*
*Board of County Commissioners, Charles County*

You have asked for an opinion of the Attorney General on whether Charles County (the "County"), as a code home rule jurisdiction, possesses the authority, absent enabling legislation enacted by the General Assembly, to levy a "host fee" on private waste transfer facilities (also known as "transfer stations") that wish to operate in the County. In your request, you have indicated that, as you understand it, a "host fee" is a fee that an operating company pays to a local government to locate, construct, operate, and/or expand waste or recycling facilities and that, here, the contemplated host fee would be charged as a condition of allowing a private transfer facility to collect waste at the facility and then transfer that waste to another facility outside the County, rather than to dispose of waste at the County landfill.

Your request indicates that the fees would "be used to mitigate against roadway usage, litter generation, traffic congestion, and loss in revenue from waste that would otherwise be subject to fees for disposal at the County-operated landfill." The opinion of the County Attorney that was included with your request further explains that "[o]perators of such facilities may be met with local opposition to the construction of waste facilities, and to ease such opposition, a local authority may impose some form of host compensation to be paid to the local government, in exchange for their permission to proceed with developing the facility." Memorandum of E. Wesley Adams III, Charles County Attorney, to the Charles County Commissioners, at 1 (June 8, 2020) ("Adams Memorandum").

For the reasons explained below, it is our opinion that, under Article XI-F, § 9 of the Maryland Constitution, Charles County does not possess the requisite authority to levy the proposed "host fee," as described in your request, without express authority from the General Assembly, and that the General Assembly has not yet granted that authority. We do not offer an opinion about a "host

fee" that might be different in nature from the one described in your request, about a "host fee" imposed on a different type of facility than a waste transfer station, or about the authority of a jurisdiction other than Charles County to impose a "host fee."[1]

# I
# Background

## A.    *Charles County and Code Home Rule*

Charles County is a code home rule jurisdiction governed by Article XI-F of the Maryland Constitution.  "Code home rule counties derive their powers from two main sources—the Constitution itself and legislation enacted by the General Assembly."  96 *Opinions of the Attorney General* 36, 37 (2011) (citing *Kent Island Def. League, LLC v. Queen Anne's County Bd. of Elections*, 145 Md. App. 684, 688 (2002)); *see also* 98 *Opinions of the Attorney General* 60 (2013) (discussing some of the powers of code counties); 62 *Opinions of the Attorney General* 275 (1977) (describing the historical background of Article XI-F).

Article XI-F, § 9 of the Maryland Constitution provides that "[a] code county shall not levy any type of tax, license fee, franchise tax, or fee which was not in effect or authorized in the code county at the time it came under the provisions of this Article, until an express authorization of the General Assembly has been enacted for this purpose by a general law which in its terms and effect applies alike to all code counties in one or more of the classes provided for in Section 5 of this Article."[2]  The Court of Appeals has interpreted the largely identical provision governing municipalities—Article XI-E, § 5—to apply "not only to revenue-raising levies but to regulatory levies as well."  77 *Opinions of the*

---

[1] We understand your question to be whether Charles County may *unilaterally* impose the contemplated host fee on private transfer stations.  We thus have not analyzed, for example—and do not offer an opinion on—whether the County or any other local jurisdiction may enter into a contract with a private operator of a waste facility under which the operator agrees to pay a "host fee."

[2] By statute, there are four classes of code counties:  those in Central Maryland, on the Eastern Shore, in Southern Maryland, and in Western Maryland.  *See* Md. Code Ann., Local Gov't ("LG") § 9-302(a).  Charles County is currently the only code county in the Southern Maryland class, as defined by that provision.

*Attorney General* 37, 39 (1992) (citing *Campbell v. Mayor & Aldermen of the City of Annapolis*, 289 Md. 300, 308 (1981)). As we have previously noted, "[s]uch a broad interpretation of this limitation suggests that the entire subject of the levying of taxes and fees by code counties has been reserved to the General Assembly." 77 *Opinions of the Attorney General* at 39; *see also* 64 *Opinions of the Attorney General* 296 (1979) (discussing Article XI-F, § 9). In short, as a code home rule county, Charles County must have "express authorization" from the General Assembly before it levies "any type" of tax, license fee, franchise tax, or fee not already in effect or authorized in the County at the time it became a code home rule jurisdiction, which—for Charles County—was on December 5, 2002.[3]

## B. Waste Transfer Stations

The operation of waste transfer stations is governed by Title 9 of the Environment Article, as implemented by regulations promulgated by the Maryland Department of the Environment ("MDE"). *See*, *e.g.*, Md. Code Ann., Envir. ("EN") § 9-210; COMAR 26.04.07.24; COMAR 26.03.03.05. At the most general level, a waste "transfer station" is a type of "[s]olid waste acceptance facility." EN § 9-501(n) (defining "[s]olid waste acceptance facility" to mean "any sanitary landfill, incinerator, transfer station, or plant whose primary purpose is to dispose of, treat, or process solid waste"). More specifically, a "transfer station" is defined under MDE's regulations as:

> a place or facility where waste materials are taken from one collection vehicle (for example, compactor trucks) and placed in another transportation unit (for example, over-the-road tractor-trailers, railroad gondola cars, barges or ships) for movement to other solid waste acceptance facilities. For the purposes of these regulations, collection points serving rural residential areas are not considered to be transfer stations, provided that solid waste is not transferred from a collection vehicle to another transportation unit. The movement or

---

[3] The voters of Charles County approved the resolution adopting home rule jurisdiction on November 5, 2002, and Article XI-F of the Maryland Constitution provides that a "county shall become a code county under the provisions of this Article, on the thirtieth day after the election" at which the resolution is approved. Md. Const., Art. XI-F, § 2.

> consolidation of a single generator's solid waste at the site of generation may not be considered to be a transfer station.

COMAR 26.04.07.02B(32).

It is important to note that these regulations establish a clear distinction between transfer stations and other types of waste acceptance facilities. Most relevant to this analysis, while MDE's regulations define a "transfer station" as "a place or facility where waste materials are taken from one collection vehicle . . . and placed in another transportation unit . . . for movement to other solid waste acceptance facilities," *id.*, the regulations define a "sanitary landfill" as "an engineered method of *disposing of* solid wastes on land in a manner that: (a) [m]inimizes public health and environmental hazards[,] and (b) [i]s designed, installed, and operated according to the provisions of these regulations," COMAR 26.04.07.02B(27) (emphasis added). Thus, the primary difference between a sanitary landfill and a waste transfer station seems to be that a transfer station is a place where waste is *temporarily* collected to be transferred somewhere else for permanent disposal, whereas a sanitary landfill is a place where waste is disposed of *permanently*.

## C.   *Host Fees*

The term "host fee" is not defined by any Maryland statute or regulation. Nor have such fees been the subject of review by the Maryland courts or any opinions of our Office. However, such fees have apparently been implemented in jurisdictions throughout the country. *See* Neil R. Shortlidge & S. Mark White, *The Use of Zoning and Other Local Controls for Siting Solid and Other Hazardous Waste Facilities*, Nat. Resources & Env't, Winter 1993 at 3.[4]

While the exact nature of these fees varies depending on the jurisdiction, it is our understanding that "host fees" are typically understood to be "charges applied as a condition of permitting or other regulatory approvals that are designed to mitigate the impacts

---

[4] It is our understanding that some local jurisdictions in Maryland charge fees that they may have termed "host fees" to private waste facilities, but the nature and permissibility of those fees is beyond the scope of your specific opinion request.

created by the proposed [waste] facility on the community, public facilities and services, and natural resources." *Id.* at 5. These fees also ordinarily "compensate the community for the risks created by the waste facility," *id.*, and "allow the developer to proceed with construction while providing an important revenue source to the community," *id.* at 44. This economic benefit can "make its construction more politically palatable to citizens in the community." *Id.*

Consistent with that understanding, you explain in your request that the host fee would "be used to mitigate against roadway usage, litter generation, traffic congestion, and loss in revenue from waste that would otherwise be subject to fees for disposal at the County-operated landfill." The County Attorney also noted that the fee may be justified in part by "the transfer stations' impact on County roadways that may require more frequent maintenance and improvement of public road facilities designed to serve the needs of the public and the transfer station, as well to mitigate against other nuisances from the collection of waste at the station." Adams Memorandum at 2. It thus appears from the County Attorney's opinion that Charles County would impose the fee at least in part for purposes of raising revenue for the County and thereby making the transfer facilities more palatable to the public.

### D.   *Fees Versus Taxes*

It is sometimes relevant under Maryland law to determine whether a particular "fee" is a "regulatory fee," a "user fee," or a fee in the nature of a tax. *See, e.g.*, 96 *Opinions of the Attorney General* 61, 67 (2011); 91 *Opinions of the Attorney General* 14, 17-19 (2006). In distinguishing among these types of charges, "the purpose of the enactment governs rather than the legislative label." *Eastern Diversified Properties, Inc. v. Montgomery County*, 319 Md. 45, 53 (1990) (quoting *Campbell*, 289 Md. at 305). "Generally, a tax is designed primarily to raise revenue, a regulatory fee funds a regulatory measure, and a user fee pays for a commodity consumed or a service rendered." 96 *Opinions of the Attorney General* at 67. In particular, as between regulatory fees and taxes, the Court of Appeals has articulated the following distinction:

> There is no set rule by which it can be determined in which category a particular Act primarily belongs. In general, it may be said that when it appears from the Act itself that revenue is its main objective, and the amount

> of the tax supports that theory, the enactment is a revenue measure. . . . [W]here the fee is imposed for the purpose of regulation, and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper, imposed by virtue of the police power; but where it is exacted solely for revenue purposes and its payment give[s] the right to carry on the business without any further conditions, it is a tax.

*Eastern Diversified Properties*, 319 Md. at 53 (internal citation and quotation omitted).  For a fee to qualify as regulatory, therefore, the fee generally must "require[] compliance with certain conditions beyond mere payment of a prescribed sum," and "[t]he amount of revenue generated by [the] . . . fee must be 'reasonable' and bear 'some definite relation to the purpose of the regulation.'"   91 *Opinions of the Attorney General* 152, 156 (2006) (quoting *Mayor & City Council of Ocean City v. Purnell-Jarvis*, 86 Md. App. 390, 405 (1991)).  In other words, to be a regulatory fee, there must be a sufficient "nexus between the charges and the stated regulatory purpose."  *Id.* (citing *Eastern Diversified Properties*, 319 Md. at 55).

As noted above, however, the limitation on the authority of code counties in Article XI-F, § 9 "applies not only to revenue-raising levies but to regulatory levies as well."  77 *Opinions of the Attorney General* at 39.  That means a code county must have "express authorization" from the General Assembly to charge a fee that was not in effect or authorized before the county became a code home rule jurisdiction regardless of whether that fee is properly characterized as a regulatory measure or as a revenue-raising tax.  Still, whether a fee has been expressly authorized by a particular statute may "depend on whether [the fee] is more aptly characterized as a regulatory measure or a tax," 89 *Opinions of the Attorney General* 212, 214 (2004), because some statutes might authorize only regulatory fees, rather than fees in the nature of a tax, or vice versa.

## II
## Analysis

You have asked whether Charles County may impose a "host fee" on waste transfer stations that might wish to operate in the

County. As explained above, a code county "shall not levy any type of tax, license fee, franchise tax, or fee which was not in effect or authorized in the code county at the time it came under the provisions of this Article [i.e., Article XI-F], until an express authorization of the General Assembly has been enacted for this purpose by a general law which in its terms and effect applies alike to all code counties in one or more of the classes provided for in Section 5 of this Article." Md. Const., Art. XI-F, § 9. To answer your question, therefore, we must consider: (1) whether, at the time Charles County became a code home rule jurisdiction, a "host fee" for waste transfer facilities was in effect in Charles County or there was an existing provision of law that would have authorized such a "host fee" in the County; and (2) if not, whether the County now has express authorization from the General Assembly to levy the "host fee" in question.

## A.    *Was a Host Fee in Effect or Authorized when Charles County Became a Code Home Rule Jurisdiction?*

Turning to the first prong, it does not appear that "host fees" for waste transfer facilities were in effect or authorized in Charles County before the County became a code home rule jurisdiction. Preliminarily, as the County Attorney noted in his opinion, "[t]here is no question that an explicit host fee imposed upon a transfer station did not exist in 2002[,] as a private waste acceptance facility has not existed previously in the County." Adams Memorandum at 1. But Article XI-F does not require a tax or fee to have been "in effect" at the time a county adopted code home rule, so long as the tax or fee was "authorized" at that time. Md. Const., Art. XI-F, § 9. We thus must determine whether the "host fee" about which you ask might have been "authorized" in the County by a provision of the Charles County Code of Ordinances, the Public Local Laws of Charles County, or the Maryland Code that existed before December 5, 2002.

As far as we have been able to tell, there were no such provisions authorizing the hypothetical "host fee" on waste transfer facilities that is the subject of your request.[5] Although § 254-7 of

---

[5] To be clear, we have not scoured every provision of the relevant codes that existed in 2002, but the County Attorney did not identify any relevant provisions, and we are also not aware of any. If another provision can be identified that we did not consider, that could, of course, affect the analysis.

the Charles County Code of Ordinances and Resolutions—which took effect in 1982, before Charles County adopted home rule—refers to a fee that is charged for the "use of" the County's "sanitary landfills,"[6] that fee appears to be distinguishable from the proposed "host fee" for waste transfer facilities. One important difference is that, as the County Attorney explained in his opinion, the proposed "host fee" would not be for disposal of waste in the County landfill but instead would be a fee charged to a private entity in exchange for affording that entity the privilege to operate the transfer station and, in doing so, to transfer the waste in question to some location outside the County. Adams Memorandum at 1-2.

Because § 254-7 contemplates a service charge for "use of" the landfill, the County Attorney concluded that it could not cover the host fee, which would not be for "the service of disposing of the waste . . . at the County landfill." Adams Memorandum at 1. In fact, according to the County Attorney, the waste to be processed through the transfer station in the County "is not intended for disposal at the landfill whatsoever, not even on a temporary basis." *Id.* That distinction is reinforced by the fact that landfills are treated differently than transfer stations under MDE's regulations, as explained above. *See* Part I.B, *supra*. We ordinarily defer to a County Attorney's interpretation of county laws, *see, e.g.*, 88 *Opinions of the Attorney General* 145, 150 (2003), and do so here.

More fundamentally, though, § 254-7 of the County Code could not have served as an authorization for the contemplated "host fee" here because the provision of State law that authorized that ordinance did not provide for the power to impose such a "host fee." *See* Md. Code, Art. 25, § 14A (2001 Repl. Vol.) (now codified at LG § 13-403). That State law, both at the time the ordinance was enacted and when Charles County later adopted code home rule, provided that "[t]he county commissioners of every county in the State may acquire, maintain, and operate a tract of land or tracts or parcels of land within the limits of the county for the disposal of refuse, garbage, rubbish, or any other matter as in their judgment may promote the public health of the inhabitants of the county." *Id.* In the "exercise of that power," the counties could "[m]ake agreements . . . for cooperation in, and financial

---

[6] According to the County Attorney's opinion, although the fee is mentioned in this provision, the fee is actually imposed each year through the County's annual budget ordinance, and such fees for the use of the County's landfills have been imposed—apparently through the budget—since at least 1974.

support by way of service charges and fees, in the acquisition, construction, operation and maintenance of th[ose] disposal areas or facilities," as well as "[f]ix and collect reasonable service charges or fees . . . for the use of the disposal areas or facilities." *Id.*; *see also* 86 *Opinions of the Attorney General* 153 (2001) (discussing some of the other powers granted to counties under what was then Article 25, § 14A). As that language makes clear, the provision could not have extended to the contemplated "host fee" imposed on a private transfer facility that will not be disposing of refuse, garbage, or rubbish in the County's landfill.[7]

We recognize that, under the former Article 25, § 3(v)(1),[8] a number of counties, including Charles County, had been granted powers as of December 2002 that might have been read to include the power to regulate transfer facilities. Under that section as it existed at the relevant time, counties could "require, regulate, or provide for the collection, removal, and disposal of refuse, garbage, rubbish, filth, or any other matter or thing that is or may become injurious to the health or comfort of the inhabitants of the county" and "provide whether the expense, if any, shall be borne by individual owners or tenants or shall be paid for in whole or in part by the county." Md. Ann. Code, Art. 25, § 3(v)(1) (2001 Repl. Vol.).

That language, however, speaks to the regulation of certain garbage-related activities themselves, not to funding the maintenance of county infrastructure or to raising revenue to make a facility palatable to the County's residents, as seems to be contemplated by the host fee in question.[9] Although the power to

---

[7] Similarly, § 133-1 of the Public Local Laws of Charles County, which might also have been a partial source of authority for § 254-7 of the County Code, applies only to the County's "*disposal* areas" and would not seem to extend to a private transfer station.

[8] Article 25, § 3(v)(1) was recodified in 2013 and now appears as LG § 13-402(c). *See* 2013 Md. Laws, ch. 119.

[9] The extent to which a county may regulate transfer stations and other waste acceptance facilities under current law may also be limited to some degree by State statute, which reserves to the State the regulation of many environmental-protection matters related to solid waste. *See Days Cove Reclamation Co. v. Queen Anne's County*, 146 Md. App. 469, 501-02 (2002) ("[T]he traditional zoning and land use decisions which . . . are to be made by the local government do not include determining what is necessary in order to protect the environment from the pollutants that are generated specifically by a rubble landfill."). We need not decide the extent of those limits here, however.

regulate an activity can often include the power to impose regulatory fees in connection with the activity being regulated, so long as there is a sufficient "nexus between the charges and the stated regulatory purpose," 91 *Opinions of the Attorney General* at 156 (citing *Eastern Diversified Properties*, 319 Md. at 55), the regulatory authority granted by Article 25, § 3(v)(1) does not seem to have a nexus to—and thus did not authorize—the County to charge the host fees you describe. *See, e.g.*, *Mayor & City Council of Baltimore v. Canton Co. of Baltimore*, 186 Md. 618, 631-32 (1946) ("Power delegated to a [local jurisdiction] to 'regulate' or to 'license and regulate' does not include power to impose a license tax or fee to raise revenue that bears no reasonable relation to the expense of regulation").[10] Therefore, regardless of the extent to which former Article 25, § 3(v)(1) might have authorized Charles County to regulate transfer stations before December 5, 2002—which we need not decide here—the provision would not have authorized the "host fee" contemplated by your request .

In sum, it does not appear that there was any provision in effect in December of 2002, when Charles County became a code home rule jurisdiction, that would have authorized the County to impose the "host fee" that is the subject of your request.

**B.    *Has the General Assembly Expressly Authorized Host Fees for Waste Transfer Facilities in Charles County?***

Because it does not appear that a "host fee" of the type mentioned in your request was either in effect or authorized in Charles County at the time the County became a code home rule jurisdiction, in order to be valid, such a fee must be expressly authorized by the General Assembly. *See* Md. Const., Art. XI-F, § 9. Thus, we turn to the second prong of our analysis, i.e., whether Charles County has express authority from the General Assembly to levy the proposed "host fee."

The statutory powers of code counties are generally (though not exclusively) codified in one of three locations: Title 10, Subtitle 3 of the Local Government Article, which lists the powers

---

[10] Similarly, although the part of that same statute that gave counties the power to "provide whether the expense, if any, [for the collection, removal, and disposal of refuse] shall be borne by individual owners or tenants or shall be paid for in whole or in part by the county" might have authorized a user fee or service charge of some sort, Art. 25, § 3(v)(1), it would not have authorized a host fee as you have described it.

that are shared by both charter counties and code counties; Title 11 of the Local Government Article, which lists powers that are particular to code counties; and Title 13 of the Local Government Article, which lists certain other powers given to all counties or to a subset of particular counties. However, none of the provisions in those parts of the Maryland Code (or anywhere else in the Code, for that matter) appears to authorize the proposed "host fee."

For example, Title 10 of the Local Government Article (also known as the Express Powers Act) provides for a grant of certain express powers to code counties, *see* LG § 10-102(b) (stating that "[i]n addition to other powers granted to code counties, each code county may exercise by legislative enactment the express powers provided in Subtitle 3 of this title"), but none of those powers includes the authority to impose the "host fee" as described in your request. While the powers do include the specific authority for code counties to impose certain fees, a "host fee" is not among them. *See, e.g.*, LG § 10-312 (permitting code counties to impose franchise fees and establish rates); LG § 10-315 (permitting code counties to charge fees to businesses subject to a commercial district management authority).

And although Title 10 grants code counties the broad authority to "enact local laws to protect and promote public safety, health, morals, comfort, and welfare, relating to . . . the disposal of wastes," LG § 10-317(a)(2), that power does not constitute an "express authorization" under Article XI-F, § 9 to charge the contemplated host fee. As the Court of Appeals explained in interpreting the largely identical constitutional provision that governs municipalities, a similarly broad grant of police powers—including, among other things, the power "to protect the health, comfort and convenience of the citizens of the municipality"—was too general to qualify as an "*express* authorization" to impose a regulatory fee. *Campbell*, 289 Md. at 308-09 (emphasis added). In other words, although a broad police power granted to a home rule jurisdiction might sometimes encompass the authority to charge regulatory fees if those fees have a sufficient nexus to the purpose of a regulation imposed under that police power, *cf. Eastern Diversified Properties*, 319 Md. at 51, 53 (implying that was the case for charter counties), that was not the rule under the stricter

requirements in Article XI-E, § 5. Express authorization for the fee was instead required.[11]

Given the similarity between Article XI-F, § 9 and the constitutional provision at issue in *Campbell*, we have previously suggested that Article XI-F, § 9 would also be interpreted to require "express authorization" for both "revenue-raising" and "regulatory levies." 77 *Opinions of the Attorney General* at 39. Indeed, in that opinion, we explained that "the provisions of the Code Home Rule Article are generally modeled on the Municipal Home Rule Article," that "[t]his parallelism is especially true of the tax levy limitation in § 9 of the Code Home Rule Article," and that § 9, like the analogous provision in the Municipal Home Rule Article, "applies not only to revenue-raising levies but to regulatory levies as well." *Id.* Applying the same principles from that opinion here, the general authorization in LG § 10-317 regarding the disposal of wastes, despite its breadth, is not an "express authorization" to charge the host fee in question. Regardless of whether the host fee is viewed as revenue-raising measure or a regulatory levy, therefore, LG § 10-317 does not authorize it.

Similarly, under Title 11 of the Local Government Article, as with Title 10, there do not appear to be any provisions that would authorize a "host fee" for waste transfer facilities along the lines you describe in your request. *See, e.g.*, LG § 11-401(f)(2) (allowing code counties to "set rates, fees, and assessments for water and sewerage services and benefits"); LG § 11-504 (allowing code counties to charge "a reasonable fee" for towing company licenses).

The same is again true for Title 13 of the Local Government Article. Although the General Assembly has, under that Title,

---

[11] In reaction to *Campbell*, the General Assembly later expressly authorized municipalities to, with certain exceptions, "establish and collect reasonable fees and charges: (i) [f]or the franchises, licenses, or permits authorized by law to be granted by a municipal corporation; or (ii) [a]ssociated with the exercise of any governmental or proprietary function authorized by law to be exercised by a municipal corporation." 89 *Opinions of the Attorney General* at 217 n.3 (citing 67 *Opinions of the Attorney General* 307, 310 (1982)); *see also* LG § 5-205(d) (providing for the current version of that authorization). It does not appear, however, that any similar authorization has been enacted for all code counties. We thus do not need to decide whether the contemplated host fee would qualify as a regulatory levy.

authorized all counties to require licensing fees for the operation of junkyards, and to impose a reasonable fee for those licenses, LG § 13-504, that does not give Charles County the requisite authority to charge a "host fee" for waste transfer stations.[12]   Rather, "junkyard" is defined under that statute as "a public or private dump, automobile junkyard, automotive dismantler or recycler facility, scrap metal processing facility, outdoor place where old motor vehicles are stored in quantity or dismantled, or lot on which refuse, trash, or junk is deposited."  LG § 13-501.  Like sanitary landfills, then, junkyards are distinguishable from transfer stations in that junkyards accept trash for "deposit[]" onto the lot, not temporarily collected for transfer to transport to another location.

What is more, in authorizing a county to impose a "reasonable fee" for junkyard licenses, the language of LG § 13-504 implies that it was intended to grant the power to impose *regulatory* fees— which are generally assessed for "reasonableness," 91 *Opinions of the Attorney General* at 156 n.3—not fees in the nature of a tax. *See* 89 *Opinions of the Attorney General* at 217 (explaining under a different statute that an "authorization to impose 'reasonable' fees and charges indicates that . . . the Legislature was conferring authority to impose regulatory charges rather than taxes").  Thus, to the extent that the proposed host fee would be a revenue-raising tax, rather than a regulatory fee, that would be yet another reason why LG § 13-504 could not provide a basis for charging the host fee in question for waste transfer facilities.

Finally, we recognize that, under Title 20 of the Local Government Article, the General Assembly has authorized the imposition of development impact fees by certain counties, including Charles County.  *See* LG § 20-701 (authorizing code counties to impose "development impact fees to finance any of the capital costs of additional or expanded public works, improvements, and facilities required to accommodate new construction or development").  As we have explained in prior opinions, development impact fees are typically "imposed to offset the cost of [the] infrastructure or public facilities necessary to support new development."  89 *Opinions of the Attorney General* at 213; *see also* 91 *Opinions of the Attorney General* at 155-57;

---

[12] This provision applied to Charles County before December of 2002, *see* Md. Ann. Code, Art. 25, § 122A (2001 Repl. Vol.), so it need only have "authorized" Charles County to impose a host fee for transfer stations, not "express[ly]" so.  Either way, it cannot be read to provide the necessary authorization for such a host fee.

Paul A. Tiburzi, *Impact Fees in Maryland*, 17 U. Balt. L. Rev. 502 (1988).

Here, however, neither your request nor the County Attorney's opinion suggests that the proposed fee would be structured as an impact fee under LG § 20-701. That is, the proposed fee, as described to us, would not be limited solely to the financing of "capital costs of additional or expanded public works, improvements, and facilities required to accommodate new construction." LG § 20-701. Although the County Attorney's opinion notes that the fee might be justified *in part* by the need for "improvement of public road facilities designed to serve the needs of the public and the transfer station," that would apparently comprise only one component of the overall fee. Adams Memorandum at 2. The fee, according to your request, would also be designed to mitigate for nuisances caused by the transfer station, such as litter generation and traffic congestion, and for the loss in revenue from the transfer of waste to other jurisdictions that would otherwise be subject to fees for disposal at the County-operated landfill, as well as to "ease" local opposition to the construction of the transfer station. Those other justifications for the fee do not appear to be tied to the "capital costs" of any public works, improvements, or facilities needed to accommodate new construction, as would be required in order for a fee to be legally imposed under LG § 20-701. *See also* Shortlidge & White, *supra*, at 5 (distinguishing "host fees" for waste facilities, at least as generally understood, from "impact fees" and noting that impact fees are generally tied to the costs of "identified impacts" on public resources, while host fees generally "compensate the community for the risks created by the waste facility").

Thus, while it is at least possible that a "host fee" for a waste transfer station might qualify as a development impact fee under LG § 20-701 if it were actually tied to the "capital costs of additional or expanded public works, improvements, and facilities required to accommodate new construction" of the transfer station, the host fee that Charles County is contemplating, as described to us, likely would not qualify as a development impact fee under that statute. In our view, therefore, the General Assembly has not yet expressly authorized the fee as proposed in your letter, and, under Article XI-F, § 9, Charles County may not impose it.

### III
### Conclusion

In sum, as a code home rule county, Charles County is prohibited from imposing the "host fee" that you have described without express authority from the General Assembly, unless such a fee was in effect or authorized at the time the County became a code home rule jurisdiction. As best as we can tell, the contemplated "host fee" was neither in effect nor authorized at the time the County became a code home rule county, and the General Assembly has not expressly authorized such a fee. Therefore, based on the information provided, it is our opinion that the County currently lacks the authority to impose it.

Brian E. Frosh
Attorney General of Maryland

Christopher Franzoni
Assistant Attorney General

Patrick B. Hughes
Chief Counsel, Opinions and Advice

*Ann MacNeille, Assistant Attorney General, contributed significantly to the preparation of this Opinion.